206 P.3d 841

STATE of Hawai'i, Respondent–Appellee,

v.

Michael WOODFALL, Petitioner–
Appellant.

No. 28838.

Supreme Court of Hawai'i.

April 29, 2009.

Craig W. Jerome (Jon N. Ikenaga with him on the briefs), Deputy Public Defenders, for petitioner-appellant.

Delanie D. Prescott–Tate, Deputy Prosecuting Attorney, on the briefs, for respondent-appellee.

MOON, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ. and Circuit Judge AHN, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Defendant–Appellant–Petitioner Michael Woodfall ("Woodfall") petitions this court to review the Intermediate Court of Appeals' ("ICA's") November 18, 2008 judgment affirming the October 10, 2007 judgment of the first circuit court [1] ("circuit court"), convicting Woodfall of the offenses of identity theft in the second degree, in violation of Hawai'i Revised Statutes ("HRS") § 708–839.7 (Supp.2006),[2] forgery in the second degree, in violation of HRS § 708–852 (Supp.2006),[3] and attempted theft in the second degree, in violation of HRS § 705–500 (1993) [4] and HRS § 708–831(1)(b) (Supp.2006) [5]. We accepted

---

**1.** The Honorable Richard K. Perkins presided.

**2.** HRS § 708–839.7, entitled "Identity theft in the second degree," states, in its entirety:

(1) A person commits the offense of identity theft in the second degree if that person makes or causes to be made, either directly or indirectly, a *transmission of any personal information of another* by any oral statement, any written statement, or any statement conveyed by any electronic means, with the intent to commit the offense of theft in the second degree from any person or entity.

(2) Identity theft in the second degree is a class B felony.
(Emphasis added.)

**3.** HRS § 708–852 provides:

(1) A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely makes, completes, endorses, or alters a written instrument, or utters a forged instrument, or fraudulently encodes the magnetic ink character recognition numbers, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

(2) Forgery in the second degree is a class C felony.

**4.** HRS § 705–500 provides, in its entirety:

(1) A person is guilty of an attempt to commit a crime if the person:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

**5.** Under HRS § 708–831(1)(b), "[a] person commits the offense of theft in the second degree if the person commits theft" "[o]f property or services the value of which exceeds $300[.]"

Woodfall's application for a writ of certiorari, and oral argument was held on March 19, 2008.

Woodfall asserts that the ICA gravely erred by affirming the circuit court's judgment of conviction, inasmuch as the HRS § 708–839.7 phrase "transmission of any personal information of another" prohibits the "transmission of any personal information" of an actual person, and he transmitted information associated with a fictitious person.

Because HRS § 708–839.7 is susceptible to two interpretations, we construe the statute under the rule of lenity and in favor of Woodfall. Accordingly, we vacate the lower court's judgment and order and remand the case to the circuit court for re-sentencing.

## I. BACKGROUND

### A. Woodfall Charged With Identity Theft In The Second Degree

On March 6, 2006, the State of Hawai'i ("the prosecution") filed a complaint alleging that Woodfall committed the following offenses: (1) identity theft in the second degree, (2) forgery in the second degree, and (3) attempted theft in the second degree. The parties did not dispute the facts that led to this complaint. On February 27, 2006, Woodfall attempted to cash a check from maker Design Build, Incorporated, payable to Christopher B. Bailey—a fictitious person—at the First Hawaiian Bank located at 438 Hobron Lane, in Honolulu, Hawai'i. Woodfall identified himself to a bank teller as Christopher B. Bailey, presented an Idaho driver's license in the name of Christopher B. Bailey, and endorsed the check. When the teller discovered that the account of the maker had insufficient funds to cash the check, she subsequently contacted the maker's bank branch. The teller was instructed to detain Woodfall and notify the police. Upon investigation, the police discovered that the maker did not issue "Christopher B. Bailey" a check and that Christopher B. Bailey was a fictitious person.

### B. Woodfall's Motion To Dismiss Count I

Woodfall filed a motion to dismiss count I of the complaint, identity theft in the second degree ("motion to dismiss"), on December 27, 2006. Woodfall argued that, based on Hawai'i case law and the HRS § 701–118(8) (Supp.2006) definition of "another," the statutory language of HRS § 708–839.7 prohibiting "a transmission of any personal information of another," refers to the "transmission of any personal information" of an actual person. Woodfall reasoned that he attempted to assume a fictitious identity but did not attempt to transmit the "personal information of another." Therefore, he urged the court to dismiss this count.

The prosecution filed an objection to this motion on January 17, 2007, highlighting HRS § 708–839.7's phrase "personal information." The prosecution pointed out that for purposes of Chapter 708, "personal information" is defined as "information associated with an actual or a fictitious person ... that is used ... to confirm the identity of an actual or a fictitious person." HRS § 708–800. It concluded that the elements "a transmission of any personal information of another" include "a transmission of personal information *of a fictitious person.*" (Emphasis added.)

At the January 17, 2007 hearing on this motion, Woodfall argued that "the 'personal information' [of HRS § 708–839.7] is now qualified by the words 'of another.' The definition 'of another' by statute or by case law is a human being who was born and alive." Woodfall's counsel reiterated that under the plain language of the statute, Woodfall cannot "legally be found guilty of identity theft when he did not use the identity of an actual real person." The prosecution countered that the statute and the statutory definitions of "personal information" and "another" provide adequate notice that the conduct requirement of HRS § 708–839.7 prohibits the transmission of personal information of an actual or fictitious person.

In an order dated February 23, 2007, the circuit court denied Woodfall's motion, concluding that the phrase in question prohibits the transmission of any personal information of an actual or fictitious person. The court rejected Woodfall's narrow interpretation of HRS § 708–839.7, noting that it would be "directly at odds" with the HRS § 708–800

definition of "personal information." It further held that "it certainly is not clear—especially in light of [HRS § ]708–800's definition of 'personal information'—that the legislature's use of 'another' was meant to exclude fictitious persons." In denying Woodfall's motion, the court constructed "another" as follows:

A construction of the term "another" that would give force to and preserve both the legislature's intent to exclude the transmission of one's own personal information from the application of [HRS § ]708–839.7 and the "information associated with a fictitious person" language of [HRS § ]708–800's definition of "personal information" is simply—"any real or fictitious person other than the person transmitting the information."

On January 17, 2007, Woodfall pled no contest to forgery in the second degree and attempted theft in the second degree. After the court denied Woodfall's motion to dismiss, on June 15, 2007, Woodfall pled guilty to the charge of identity theft in the second degree. The court agreed to follow the plea agreement between the prosecution and Woodfall, which included the following terms: (1) Woodfall must serve an open ten year term to run concurrently with counts II (open five year sentence) and III (open five year sentence) and with any other sentence he is serving, and (2) Woodfall's guilty plea in count I is conditional,[6] and Woodfall preserved the right to appeal the circuit court's ruling denying his motion to dismiss.

The court entered final judgment on October 10, 2007. Woodfall filed a notice of appeal on November 8, 2007.

## C. ICA Affirmed The Circuit Court's Ruling

On appeal, Woodfall argued that the plain language of the HRS § 708–839.7 phrase "transmission of any personal information of another" prohibits the transmission of personal information from a real person, but not a fictitious person. Woodfall also maintained

that, even assuming that the statute is ambiguous and the court is required to resort to the statute's legislative history, extrinsic documents verify that the statute intended to "provide criminal penalties for those *who steal the identity of another.*" (Quoting Sen. Stand. Comm. Rep. No. 446, in 2002 House Journal, at 1409–10.) (Emphasis in original.)

The prosecution argued that the circuit court's construction of HRS § 708–839.7 was correct under the plain language of the statute and the statute's legislative history. It pointed out that the legislature indicated that the bill that enacted this statute served to "provide criminal penalties for persons: (1) Committing identity theft of another individual; and (2) Obtaining identity documents under false pretenses or *using a false or fictitious identity.*" (Quoting Hse. Conf. Comm. Rep. No. 25, in 2002 House Journal, at 1765.) (Emphasis in original.)

The ICA issued a summary disposition order that affirmed the circuit court's judgment. The ICA determined that the circuit court's interpretation of HRS § 708–839.7 was correct:

The statutory language of HRS § 708–839.7 when read with the definition of "personal information" provided in HRS § 708–800 supports the circuit court's determination that under HRS § 708–839.7, a person commits the offense of identity theft in the second degree if he or she transmits any personal information of *an actual or fictitious person* with the intent to commit the offense of theft in the second degree.

(Emphasis added.) Noting that "Woodfall admitted that he used a fictitious identity with the intent to commit theft in the second degree," the ICA declined to reverse the circuit court's decision to deny Woodfall's motion to dismiss. The ICA filed a judgment on appeal on November 18, 2008.

On January 20, 2009, Woodfall filed a timely application for writ of certiorari.

---

6. Under Hawai'i Rules of Penal Procedure Rule 11(a)(2), "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specific pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea."

## II. STANDARDS OF REVIEW

### A. Certiorari

The appropriate standard of review for determining whether to accept or reject an application for writ of certiorari is set forth in Hawai'i Revised Statutes ("HRS") § 602–59 (Supp.2008), as follows:

(a) After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court. (b) The application for writ of certiorari shall tersely state its grounds, which shall include:

(1) Grave errors of law or of fact; or (2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of those errors or inconsistencies dictating the need for further appeal.

### B. Statutory Interpretation

 "The interpretation of a statute is a question of law reviewable *de novo.*" *Capua v. Weyerhaeuser Co.*, 117 Hawai'i 439, 443, 184 P.3d 191, 196 (2008) (citing *Flor v. Holguin*, 94 Hawai'i 70, 76, 9 P.3d 382, 388 (2000)) (brackets, citations, and ellipses omitted). Statutory construction is guided by the following rules:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Carlisle v. One (1) Boat,* 119 Hawai'i 245, 256, 195 P.3d 1177, 1188 (2008) (quoting *In re Contested Case Hearing on Water Use Permit Application,* 116 Hawai'i 481, 489–90, 174 P.3d 320, 328–29 (2007)) (block quotation format altered).

## III. DISCUSSION

As previously stated, Woodfall challenges the ICA's interpretation of HRS § 708–839.7, arguing that the term "of another" is a crucial and plain element of the statutory phrase "transmission of any personal information of another." He further maintains, in the alternative, that this interpretation is supported by the statute's legislative history: the statute's purpose "is to provide criminal penalties for those who steal the identity of another ..." (Quoting Sen. Stand. Com. Rep. No. 2960, in 2002 Senate Journal at 1421.) Woodfall contends that his use of a fictitious identity did not satisfy the conduct element of identity theft in the second degree, and he urges this court to vacate the circuit court's order denying his motion to dismiss this charge.

### A. Plain Language of HRS § 708–839.7

To analyze HRS § 708–839.7, we begin with the language of the statute itself. HRS § 708–839.7 provides, in relevant part:

A person commits the offense of identity theft in the second degree if that person makes or causes to be made, either directly or indirectly, *a transmission of any personal information of another* by any oral statement, any written statement, or any statement conveyed by any electronic means, with the intent to commit the offense of theft in the second degree from any person or entity.

(Emphasis added.) Specifically, we focus on the phrase "a transmission of any personal information of another."

"[P]ersonal information" is defined in HRS § 708–800, for purposes of Chapter 708, as follows:

> information associated with an actual person or a fictitious person that is a name, an address, a telephone number, an electronic mail address, a driver's license number, a social security number, an employer, a place of employment, information related to employment, an employee identification number, a mother's maiden name, an identifying number of a depository account, a bank account number, a password used for accessing information, or any other name, number, or code that is used, alone or in conjunction with other information, to confirm the identity of an actual or a fictitious person.

(Emphases added.)

■■■ Similarly, we apply the HRS § 701–118 (Supp.2006) definition of "another" to HRS § 708–839.7, inasmuch as this definition applies to the entire Hawai'i penal code "unless a different meaning plainly is required." We decline to accept the prosecution's argument that the HRS § 701–118 definition of "another" is "special," and that the identity theft statute applies the "ordinary" dictionary meaning of "another." [7] See HRS § 701–118 (defining various terms to apply

"[i]n this Code, unless a different meaning is plainly required"); see also HRS § 701–102(3) (1993) ("The provisions of chapters 701 through 706 of the Code are applicable to offenses defined by other statutes, unless the Code otherwise provides."). Thus, "another," as stated in HRS § 708–839.7, employs the HRS § 701–118 definition, "any other person," and "person" is further defined as "any natural person." [8] HRS § 701–118. "[A]nother" in HRS § 708–839.7, therefore, refers to any "natural person" other than the person who "makes or causes to be made, either directly or indirectly, a transmission of any personal information ... with the intent to commit the offense of theft in the second degree from any person or entity." (Emphasis added.)

The terms of HRS § 708–839.7, therefore, conflict: "another" is defined as a "natural person," but "personal information" includes "information associated with ... a fictitious person." Based on these differences, Woodfall and the prosecution dispute the plain meaning of HRS § 708–839.7.

According to Woodfall, the words "of another" is a "modifying term" of "personal information," and "limit[ ] the prohibitions of the statute only to information from a natural, actual person." [9] Therefore, HRS

---

7. The prosecution contends that "the legislature desired the term 'personal information' as defined in [HRS § 708–800] to be used in qualifying the phrase 'of another.'" It argues that the definition of "personal information" "is contained in the same chapter as [HRS § 708–839.7] and created by the same piece of legislation." However, we must first construct the statute based on its plain language before considering extrinsic evidence.

8. "Person" is defined in HRS § 701–118's as, "any natural person, including any natural person whose identity can be established by means of scientific analysis, including but not limited to scientific analysis of deoxyribonucleic acid and fingerprints, whether or not the natural person's name is known, and, where relevant, a corporation or an unincorporated association[.]"

9. Although "another" is already defined in HRS § 701–118 for purposes of the entire Hawai'i penal code, see supra, Woodfall also points to Hawai'i case law defining "another" for purposes of interpreting HRS § 708–839.7. Woodfall cites to three cases, State v. LeVasseur, 1 Haw. App. 19, 25, 613 P.2d 1328, 1333 (1980) (determining that the choice of evils defense was not

available to the defendant because a natural person—and not a dolphin—is "another," pursuant to HRS § 701–118), State v. Jardine, 101 Hawai'i 3, 9–10, 61 P.3d 514, 519–20 (App.2002) (holding that the defendant may not use the choice of evils defense for protecting an unborn child where the legislature did not include "unborn children" in the definition of "another" or "person"), and State v. Aiwohi, 109 Hawai'i 115, 123 P.3d 1210 (2005), arguing that they each interpret "another" as a "natural person" and not a fictitious person. Under the same analysis of LeVasseur and Jardine, a fictitious person is not included in the definition of "another" or "person." See LeVasseur, 1 Haw.App. at 25, 613 P.2d at 1333; Jardine, 101 Hawai'i at 9–10, 61 P.3d at 519–20.

Woodfall also cites to Aiwohi to support his claim that "another" clearly refers to an actual person. In Aiwohi, this court reviewed the requirements of HRS § 707–702(1)(a), which states that "[a] person commits the offense of manslaughter if ... [h]e recklessly causes the death of another person." 109 Hawai'i at 118–29, 123 P.3d at 1213–24 (emphasis added). The defendant argued, among other things, that her manslaughter prosecution contradicts the plain language of the manslaughter statute, inasmuch as

§ 708–839.7 requires the transmission of any other *natural person's* personal information. In our view, Woodfall presents a strong argument. The words "of another" appear to qualify the phrase "personal information." Woodfall's interpretation of HRS § 708–839.7, therefore, may be valid under the plain language of the statute.

The prosecution's interpretation of HRS § 708–839.7 is also persuasive. As the circuit court reasoned, if the phrase "personal information of another" "refers only to personal information of a real person, not a fictitious person," it would directly contradict the statutory definition of "personal information." *See* HRS § 708–800 (defining "personal information" as "information associated with an actual person or a fictitious person"). Presented with these conflicting terms, the circuit court determined that the word "another" must refer to "any real or fictitious person other than the person transmitting the information."

Constructing "another" this way would correspond with the definition of "personal information," but doing so would impermissibly require this court to add terms to the definition of "another." *See State v. Aiwohi,* 109 Hawai'i 115, 129, 123 P.3d 1210, 1224 (2005) ("[A] criminal statute 'must be strictly construed and ... cannot be extended beyond the plain meaning of the terms found therein.'" (quoting *State v. Johnson,* 50 Haw. 525, 526, 445 P.2d 36, 37 (1968))); *State v. Mueller,* 102 Hawai'i 391, 394, 76 P.3d 943, 946 (2003) ("[T]his court cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts.") (internal quotation marks and citation omitted). We cannot accept this construction, inasmuch as it would directly contradict the definition of the word "another."

■ The prosecution also asserts that the statute cannot prohibit the transmission of "information associated with an actual person" but not information associated with a fictitious person because such a result would be absurd. *See State v. Bates,* 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997) ("Provisions of a penal statute will be accorded a limited and reasonable interpretation ... in order to preserve its overall purpose and to avoid absurd results."). It claims that the identity theft statutes were "designed to protect individuals and businesses from loss due to a defendant's misrepresentation of his actual identity." We disagree. As further discussed below, the legislature appeared to be concerned with protecting the person whose identity was stolen. *See* Hse. Stand. Comm. Rep. No. 446, in 2002 House Journal, at 1409–10 (expressing concern that "misappropriation of other people's identification information is on the rise"); Hse. Conf. Comm. Rep. No. 25, in 2002 House Journal, at 1765 (same); *see also infra.*

Indeed, in recognition of the harms of identity theft, the U.S. Congress provided additional criminal penalties for identity theft "of another person." 18 U.S.C. § 1028A (2004) (imposing a term of imprisonment of two years to a person committing certain

---

"her alleged prenatal conduct was directed at her fetus, which is not a 'person' as required by the statute." *Id.* at 117, 123 P.3d at 1223. This court agreed, ruling that (1) the manslaughter statute is clear and ambiguous and (2) a fetus does not fit within the HRS § 707–700 definition of "person." *Id.* at 128–29, 123 P.3d at 1223–24. Woodfall's reliance of *Aiwohi* is misplaced. *Aiwohi's* analysis of HRS § 707–700's "person" is irrelevant here, where (1) we are examining the word "another," not "another person," and (2) the identity theft statutes are not in Chapter 707 and are not governed by the chapter's definitions.

The prosecution counters that *Aiwohi* actually supports its interpretation of "another." In *Aiwohi,* this court noted that "person" is defined in two ways—the general Hawai'i penal code definition ("any natural person," as defined in HRS § 701–118(7)) and the definition governing its chapter ("a human being who has been born and is alive," as defined in HRS § 707–700)—and applied the chapter's definition in interpreting the manslaughter statute. 109 Hawai'i at 118, 123 P.3d at 1213. Based on *Aiwohi,* the prosecution argues that "the definitions to be applied should come from the same chapter of the penal code as the charged offense, rather than using general definitions from other chapters," and that, here, "personal information" as defined in HRS § 708–800 trumps the definition of "another" in HRS § 701–118. Although this court applied the specific definition of "person" to determine if the term includes a fetus, as opposed to the general Hawai'i penal code definition of "person," the two definitions did not conflict. *Aiwohi* did not suggest that the chapter's definition trumps the general penal code definition.

felony violation and "knowingly transfer[ring], possesses[sing], or us[ing], without lawful authority, a means of identification of another person"). In adopting this legislation, the Committee on the Judiciary noted the increasing problem of identity theft, "crimes in which someone wrongfully obtains and uses *another person's* personal data in some way that involves fraud or deception, typically for economic or other gain...." H.R.Rep. No. 108–528, at 4 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 780 (emphasis added). It observed the FTC's random sample survey that suggested that almost ten million Americans were victims of some form of identity theft in 2003. *Id.* It further noted that identity theft threatens national security and that it cost businesses and financial institutions $47.6 billion and individual consumers $5.0 billion, and that it *harmed the credit rating of the person whose identity was stolen.*[10] *Id.* Contrary to the prosecution's argument, it would not be absurd if HRS § 708–839.7 provided criminal penalties for transmitting the personal information of another *actual person* but not the information of a fictitious person, with the intent to commit theft in the second degree from any person or entity.

Because both parties' construction of the identity theft in the second degree statute are plausible based on the statute's plain

language, we next consider the legislature's intent in creating the statute.

## B. Extrinsic Aids

 As previously quoted,

In the event of ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

*State v. Bayly,* 118 Hawai'i 1, 7, 185 P.3d 186, 192 (2008) (citing *Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999)) (internal quotation marks omitted).

### 1. *Legislative history of HRS § 708–839.7*

The original bill that enacted HRS § 708–839.7, House Bill 2498, sought to amend chapter 708 by adding new sections regarding (1) "identity theft,"[11] (2) "obtaining a government-issued identification document under false pretenses," and (3) "deceptive

---

**10.** The report also described examples of the damage that people were capable of when stealing another person's identity—they used the identities of other actual people as part of a plot to blow up Los Angeles International Airport and to obtain Federal income tax returns, loans and lines of credit, and government benefits. H.R.Rep. No. 108–528, at 5–6 (2004), *reprinted in* 2004 U.S.C.C.A.N. at 781–82.

**11.** The bill sought to add three new sections regarding identity theft, which were entitled "Identity theft in the first degree," "Identity theft in the second degree," and "Identity theft in the third degree."

HRS § 708–839.6 (Supp.2008), entitled "Identity theft in the first degree," provides in relevant part:

(1) A person commits the offense of identity theft in the first degree if that person makes or causes to be made, either directly or indirectly, a transmission of any personal information of another by any oral statement, any written statement, or any statement conveyed by any electronic means, with the intent to:

(a) Facilitate the commission of a murder in any degree, a class A felony, kidnapping, unlawful imprisonment in any degree, extortion in any degree, any offense under chapter 134, criminal property damage in the first or second degree, escape in any degree, any offense under part VI of chapter 710, any offense under section 711–1103, or any offense under chapter 842; or

(b) Commit the offense of theft in the first degree from the person whose personal information is used, or from any other person or entity.

HRS § 708–839.8 (Supp.2008), entitled "Identity theft in the third degree," states:

(1) A person commits the offense of identity theft in the third degree if that person makes or causes to be made, either directly or indirectly, a transmission of any personal information of another by any oral statement, any written statement, or any statement conveyed by any electronic means, with the intent to commit the offense of theft in the third or fourth degree from any person or entity.

(2) Identity theft in the third degree is a class C felony.

use of a fictitious identity." [12] H.B. No. 2438, 21st Leg., Reg. Sess. (2002).[13] The legislature passed this act, but removed the bill's "deceptive use of a fictitious identity" amendment and the "personal information" definition for HRS Chapter 710. H.B. No. 2438, H.D. 1, 21st Leg., Reg. Sess. (2002); H.B. No. 2438, H.D. 1, S.D. 1, 21st Leg., Reg. Sess. (2002); H.B. No. 2438, H.D. 1, S.D. 1, C.D. 1, 21st Leg., Reg. Sess. (2002).

The Conference Committee report, written by the committee that last amended House Bill 2438, provided that "[t]he purpose of this bill is to provide criminal penalties for persons: (1) Committing identity theft of another individual; and (2) Obtaining identity documents under false pretenses or using a false or fictitious identity." Hse. Conf. Comm. Rep. No. 25, in 2002 House Journal, at 1765. Importantly, the final form of the bill was intended to criminalize "identity theft of *another individual*," (emphasis added), indicating that the legislature intended that the identity theft statutes only relate to the transmission of another actual person's personal information. Moreover, the legislative intent to criminalize "using a false or fictitious identity," appears to relate to the amendment regarding obtaining a government-issued identification document under false pretenses, inasmuch as it is juxtaposed with the purpose of prohibiting a person from "[o]btaining identity documents under false pretenses or using a false or fictitious identity." [14]

Furthermore, in discussing the problem of *identity theft*,[15] the House Judiciary and Hawaiian Affairs and Consumer Protection and Commerce Committee and the Conference Committee took issue with transmitting any

---

**12.** The proposed "Deceptive use of a fictitious identity" amendment read:

(1) A person commits the offense of deceptive use of a fictitious identity if that person, with the intent to deceive the person or entity to whom the statement is directed, makes or causes to be made, either directly or indirectly, by any oral statement, any written statement, or any statement conveyed by any electronic means, a transmission of fictitious personal information of a person purported to be real but who is fictitious.

(2) Deceptive use of a fictitious identity is a misdemeanor.

H.B. No. 2438, 21st Leg., Reg. Sess. (2002).

**13.** The House committees on Judiciary and Hawaiian Affairs and Consumer Protection and Commerce announced that the bill served to criminalize acts that appear to correspond with those sections: (1) "[s]tealing the identity *of another*" (first section), (2) "[o]btaining identity documents under false pretenses" (second section), and (3) "[u]sing a false or fictitious identity" (third section). Hse. Stand. Comm. Rep. No. 446, in 2002 House Journal, at 1409–10 (emphasis added).

**14.** The penalty for "using a false or fictitious identity," refers to the criminal statutes regarding "obtaining a government-issued identification document under false pretenses" (codified as HRS §§ 710–1016.3–.4 (Supp.2008)). HRS §§ 710–1016.3–.4 provide criminal penalties for a person who "obtain[s] identity documents . . . using a false or fictitious identity." These sections prohibit:

obtain[ing] an identification document issued by the State or any political subdivision thereof by (a) [m]aking any *statement*, oral or written, *that the person does not believe to be true*, in an

application for any identification document issued by the State or any political subdivision thereof; or (b) [s]ubmitting or inviting reliance on any *writing* that the person knows to be *falsely made*, completed, or altered.

HRS §§ 710–1016.3–.4 (emphases added). Under these statutes, a person is prohibited from knowingly falsely identifying him or herself as a fictitious person to "obtain[ ] an identification document issued by the State or any political subdivision thereof." The plain language of the statute indeed "provide[s] criminal penalties for persons . . . [o]btaining identity documents under false pretenses or *using a false or fictitious identity*." Hse. Conf. Comm. Rep. No. 25, in 2002 House Journal, at 1765 (emphasis added).

**15.** The Senate committee on Judiciary discussed the broader issues related to identity theft, as follows:

[I]n light of the terrorist attacks of September 11, 2001, the ramifications of identity theft have proven much more grave than previously thought. Identity theft, a huge problem in financial fraud and theft cases, now has implications for national security. This measure provides a comprehensive framework of statutes to deal with the various aspects of identity theft.

Sen. Stand. Comm. Rep. No. 2960, in 2002 Senate Journal, at 1421. These consequences of identity theft are generally the same as those described by the U.S. Congress when adopting 18 U.S.C. § 1028A (2004), which imposes a term of imprisonment of two years to a person committing a certain felony violation and "knowingly transfers, possesses, or uses, without lawful authority, a means of identification *of another person*." (Emphasis added.) *See supra.*

other *actual person's* information. The committees expressed concern that "misappropriation of *other people's identification information* is on the rise." Hse. Stand. Comm. Rep. No. 446, in 2002 House Journal, at 1409–10; Hse. Conf. Comm. Rep. No. 25, in 2002 House Journal, at 1765 (emphasis added). Based on this specified problem and the Conference Committee's report, it follows that HRS § 708–839.7 relates to a person from transmitting an *actual person's* personal information, but not the information associated with a fictitious person.

### 2. defining "personal information"

Though the legislature clearly intended that HRS § 708–839.7 relate to the transmission of another *actual* person's information, this construction renders a portion of the HRS § 708–800 definition of "personal information" superfluous. *See* HRS § 708–800 (defining "personal information" as "information associated with an actual person or a fictitious person . . . to confirm the identity of an actual or a fictitious person"). This definition is particularly relevant in constructing HRS § 708–839.7 because it was created in the same legislation as HRS § 708–839.7.[16] 2002 Haw. Sess. L. Act 224, § 1 at 894–96. In light of the "personal information" definition and the expressed legislative intent of Act 224, it is not entirely clear whether the identity theft statute is meant to prohibit the transmission of the information of a fictitious person.

### C. The Rule of Lenity

When a statute is ambiguous, and the legislative history does not provide sufficient guidance, we follow the rule of lenity. *Aiwohi*, 109 Hawai'i at 118, 123 P.3d at 1213 ("In the absence of clear statutory language, and with no legislative guidance vis-á-vis legislative history, the applicable doctrine is the rule of lenity." (citing *State v. Shimabukuro*, 100 Hawai'i 324, 327, 60 P.3d 274, 277 (2002) (stating that "[w]here a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity")))); *State v.*

*Kaakimaka*, 84 Hawai'i 280, 292, 933 P.2d 617, 629 (1997) (stating that "[a]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity") (citations omitted). This "means that the court will not interpret a state criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the legislature intended." *State v. Sakamoto*, 101 Hawai'i 409, 413 n. 3, 70 P.3d 635, 639 n. 3 (2003) (quoting *State v. Soto*, 84 Hawai'i 229, 248–49, 933 P.2d 66, 85–86 (1997)). Accordingly, "[u]nder the rule of lenity, the statute must be strictly construed against the government and in favor of the accused." *State v. Kalani*, 108 Hawai'i 279, 288, 118 P.3d 1222, 1231 (2005) (quoting *Shimabukuro*, 100 Hawai'i at 327, 60 P.3d at 277) (internal quotation marks omitted); *see also Bayly*, 118 Hawai'i at 15, 185 P.3d at 200 (ruling that, under the rule of lenity, it is "more appropriate to adopt a less expansive meaning of the term 'collision' ").

Because HRS § 708–839.7 is ambiguous and the legislative history does not provide sufficient guidance, we must apply the rule of lenity and adopt a less expansive meaning of the phrase "personal information of another." We hold that the HRS § 708–839.7 phrase "transmission of any personal information of another" prohibits the transmission of personal information of an actual person, but not the transmission of information associated with a fictitious person. Because Woodfall did not transmit the personal information of an actual person, he did not satisfy the conduct element of HRS § 708–839.7 and cannot be convicted of identity theft in the second degree. Therefore, the circuit court erred when it denied Woodfall's "Motion to Dismiss [Identity Theft In The Second Degree]."

### IV. CONCLUSION

Accordingly, we (1) vacate the ICA's November 18, 2008 judgment, the circuit court's

---

**16.** In addition, we note that the "personal information" phrase appears only three times in HRS

Chapter 708, specifically in the identity theft statutes.

October 10, 2007 final judgment, and the circuit court's February 23, 2007 order denying Woodfall's motion to dismiss, and (2) remand this case to the circuit court for further proceedings consistent with this opinion.