**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000098
11-MAY-2022
08:05 AM
Dkt. 45 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

—o0o—

PHILLIP J. BARKER, Plaintiff-Appellant,
v.
CHRISTOPHER YOUNG, ADMINISTRATOR,
HAWAII CRIMINAL JUSTICE DATA CENTER,
Defendant-Appellee

NO. CAAP-21-0000098

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CSP-20-0000183)

MAY 11, 2022

LEONARD, PRESIDING JUDGE, HIRAOKA AND NAKASONE, JJ.

OPINION OF THE COURT BY NAKASONE, J.

This appeal considers the application of the expungement statute to a person convicted of a violation. The pertinent statute, Hawaii Revised Statutes (**HRS**) § 831-3.2(a)[1]

---

[1]    HRS § 831-3.2 (2014 & Supp. 2018), entitled "Expungement orders," provides:

(continued...)

provides that "a person arrested for, or charged with but not convicted of a crime," is entitled to have his or her arrest record expunged (**expungement statute**).  At issue is whether the word "crime" used in the expungement statute has an ordinary meaning, or, whether the Hawaiʻi Penal Code (**Penal Code** or **Code**) provision in HRS § 701-107(5) that "[a] violation does not constitute a crime," applies.

Plaintiff-Appellant Phillip J. Barker (**Barker**) appeals from the (1) Judgment; and (2) Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Motion for Summary

---

[1](...continued)

> (a) The attorney general, or the attorney general's duly authorized representative within the department of the attorney general, <u>upon written application from a person arrested for, or charged with but not convicted of a crime</u>, or found eligible for redress under chapter 661B, <u>shall issue an expungement order</u> annulling, canceling, and rescinding the record of arrest; provided that an expungement order shall not be issued:

> (1) In the case of an arrest for a felony or misdemeanor where conviction has not been obtained because of bail forfeiture;

> (2) For a period of five years after arrest or citation in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture;

> (3) In the case of an arrest of any person for any offense where conviction has not been obtained because the person has rendered prosecution impossible by absenting oneself from the jurisdiction;

> (4) In the case of a person who was involuntarily hospitalized pursuant to section 706-607, or who was acquitted or had charges dismissed pursuant to chapter 704 due to a physical or mental disease, disorder, or defect; and

> (5) For a period of one year upon discharge of the defendant and dismissal of the charge against the defendant in the case of a deferred acceptance of guilty plea or nolo contendere plea, in accordance with chapter 853.

> . . . .

(Emphases added).

Judgment (**Order Granting Summary Judgment**), both entered and filed on March 1, 2021 by the Circuit Court of the First Circuit (**Circuit Court**).[2]

On appeal, Barker contends that the Circuit Court erred in granting Defendant-Appellee Hawaii Criminal Justice Data Center's (**HCJDC**) Motion for Summary Judgment, in which HCJDC argued that its denial of Barker's expungement application where Barker was convicted of a violation, was appropriate as a matter of law.

We hold that based on Barker's conviction for a disorderly conduct violation, Barker was convicted of a "crime" under HRS § 831-3.2(a); Barker was thus ineligible for expungement, and the Circuit Court did not err in denying Barker's expungement application. We conclude that the legislative history of the word "crime" in the expungement statute shows that the term was intended to have an ordinary meaning that does include "violations," even though the terms "crime" and "violation" are separate and distinct under the Penal Code. We therefore affirm.

## I. BACKGROUND

This appeal arises out of Barker's October 19, 2020 First Amended Complaint[3] seeking a judgment and order in the nature of mandamus to HCJDC directing HCJDC to expunge Barker's arrest record pursuant to HRS § 831-3.2. The following undisputed facts[4] were adduced from cross-motions for summary

---

[2]    The Honorable Bert I. Ayabe presided.

[3]    Barker's original Complaint was filed on July 28, 2020.

[4]    The parties agreed that the facts were undisputed:

THE COURT: Okay. Thank you.

Anything -- anything in response at all, [Barker's Counsel]?

(continued...)

judgment filed on January 2, 2021 and January 8, 2021, and from the declarations of Barker and HCJDC Administrator Christopher Young (**Young**) attached to those motions.

On October 7, 2017, Barker was arrested for the offense of Harassment pursuant to HRS § 711-1106, which classifies the offense as a petty misdemeanor.[5] On November 21, 2017, Barker was found guilty of the amended charge of Disorderly Conduct Noise Substantial Harm Persist After Warning (**Disorderly Conduct**) and fined $200.00 pursuant to HRS § 711-1101(1)(b), which classifies the offense as a violation according to HRS § 711-1101(3).[6] On June 20, 2019, Barker submitted an application to HCJDC to have his Harassment arrest record expunged pursuant to HRS § 831-3.2 because he was convicted of a "violation" and

---

[4](...continued)
> [BARKER'S COUNSEL]:  I would just mention, Your Honor, I think we're all in agreement there are no factual disputes and the court should grant summary judgment for one side or another.

> THE COURT:  Okay.  Any kind of response at all from you, [HCJDC Counsel]?

> [HCJDC COUNSEL]:  No, Your Honor.

[5]     HRS § 711-1106(2) (2014) provides:  "Harassment is a petty misdemeanor."

[6]     HRS § 711-1101 (2014), "Disorderly Conduct," provides:

> (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

> . . . .

> (b) Makes unreasonable noise;

> . . . .

> (3) <u>Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist</u>. <u>Otherwise disorderly conduct is a violation</u>.

(Emphasis added).

not a "crime." On September 19, 2019, HCJDC denied Barker's application for expungement on the basis that "arrests which result in a guilty conviction do not qualify for expungement under HRS [§] 831-3.2."

In Barker's motion for summary judgment, Barker argued that HRS § 701-107[7] classified his Disorderly Conduct conviction

---

[7] HRS § 701-107 (2014), "Grades and classes of offenses," provides:

(1) An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime. Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors. Felonies include murder in the first and second degrees, attempted murder in the first and second degrees, and the following three classes: class A, class B, and class C.

(2) A crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year.

(3) A crime is a misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined in a statute other than this Code which provides for a term of imprisonment the maximum of which is one year.

(4) A crime is a petty misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code that provides that persons convicted thereof may be sentenced to imprisonment for a term not to exceed thirty days.

(5) An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

(6) Any offense declared by law to constitute a crime, without specification of the grade thereof or of the sentence authorized upon conviction, is a misdemeanor.

(7) An offense defined by any statute of this State other than this Code shall be classified as provided in this section and the sentence that may be imposed upon conviction thereof shall hereafter be governed by this Code.

(continued...)

as a "violation" and not as a "crime," which entitled Barker to have his record expunged pursuant to HRS § 831-3.2. HCJDC argued in its cross-motion for summary judgment that a "[v]iolation is a [c]rime;" and that "crime" in HRS § 831-3.2(a) should be read in "the general sense" and not in *pari materia* with HRS § 701-107 of the Penal Code, as the narrow definition of "crime" in the Code is "contrary to the objective of the expungement law and would lead to impractical results." HCJDC also relied on an unpublished order, <u>Grindling v. Attorney Gen.</u>, No. SCPW-12-0000472, 2012 WL 1764177 (Haw. May 17, 2012) (**Grindling Order**), in which the Hawaiʻi Supreme Court denied a mandamus request for the expungement of arrest records where the petitioner was convicted of, *inter alia*, violations of the traffic code.

On January 28, 2021, the Circuit Court held a hearing on the cross-motions for summary judgment, and the parties presented brief argument. On March 1, 2021, the Circuit Court filed its Order Granting Summary Judgment, which stated:

> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
> AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
>
> . . . .
>
> 1. There is no genuine issue as to any material fact;
>
> 2. Defendant HCJDC's denial of Plaintiff Barker's application for expungement of his October 7, 2017 arrest which resulted in a guilty conviction of Disorderly Conduct, a violation, was appropriate;
>
> 3. This finding is consistent with the Hawaii Supreme Court's unpublished decision in <u>Grindling v. Attorney General</u>, SCPW-12-0000472, 2012 WL 1764177, which is persuasive;
>
> 4. Plaintiff Barker has failed to prove that he is entitled to summary judgment as a matter of law.

Barker timely appealed.

---

[7](...continued)
(Emphasis added).

## II. STANDARD OF REVIEW

### A. Summary Judgment

On appeal, we review the grant or denial of summary judgment de novo. Ralston v. Yim, 129 Hawaiʻi 46, 55, 292 P.3d 1276, 1285 (2013)(citation omitted). "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.

### B. Statutory Interpretation

The interpretation of a statute is a question of law reviewable de novo. State v. Thompson, 150 Hawaiʻi 262, 266, 500 P.3d 447, 451 (2021) (citation omitted).

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

JD v. PD, 149 Hawaiʻi 92, 96, 482 P.3d 555, 559 (App. 2021) (citation omitted). When a statute is ambiguous, the meaning of the ambiguous words may be determined by "examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law." State v. Woodfall, 120 Hawaiʻi 387, 394, 206 P.3d 841, 848 (2009) (citing State v. Bayly, 118 Hawaiʻi 1, 7, 185 P.3d 186, 192 (2008)).

## III. DISCUSSION

Barker and HCJDC disagree on whether the word "crime" in the expungement statute has an ordinary meaning and includes a violation, or whether the Penal Code definition of "crime" in HRS § 701-107 that excludes a violation, applies.

On appeal, Barker specifically contends that the Circuit Court "erred in holding that the word 'crime' in HRS § 831-3.2(a) really means 'offense' as defined in the penal code." The Circuit Court, however, did not specifically hold that the word "crime" in HRS § 831-3.2(a) "really means 'offense.'" We address Barker's argument to the extent that he claims the Penal Code meaning of "crime" applies to HRS § 831-3.2. In his Opening Brief, Barker argues that "crime" in HRS § 831-3.2 should be defined as set forth in HRS § 701-107, which states that a violation is not a crime.[8] Barker claims that "the legislature knew the meaning of the word 'crime' in the Penal Code when it enacted H.R.S. § 831-3.2 because it used the word 'crime' and 'violation' in subsection (a)."

HCJDC contends that:

> When section 831-3.2(a) is read in its entirety, it is clear that "crime" is meant in its ordinary sense. This interpretation is bolstered by the way section 831-3.2 unfolds. It begins by stating the general rule that expungement orders should issue if there is no conviction, and is then followed by provisions of exceptions to the general rule; the exceptions cover the wide range of crimes

---

[8] In Barker's reply brief, he attached his criminal record and mug shot from the HCJDC's website and argued that having his mug shot on the website constituted a "civil disability" in violation of HRS § 701-107(5) ("[C]onviction of a violation shall not give rise to any disability based on conviction of a criminal offense."). Barker requests this Court take judicial notice of this record. This record and mug shot were not introduced below and is not part of the record on appeal; thus, we do not consider it. We also do not take judicial notice of it. State v. Ayres, No. CAAP-16-0000885, 2021 WL 1626628, at *5 n.13 (App. April 27, 2021) (SDO) (rejecting a party's request, on appeal, to take judicial notice of audio-visual recordings of trial exhibits, as the party did not ask the district court to take judicial notice of the recordings at trial, and thus the recordings were not part of the record on appeal); see also State v. Kwong, 149 Hawaiʻi 106, 117, 482 P.3d 1067, 1078 (2021) (citation omitted) (appellate courts "rarely take judicial notice of facts presented for the first time on appeal[.]").

> in the ordinary sense:  felonies, misdemeanors, petty
> misdemeanors and violations.

HCJDC points to the subsection (a)(2) five-year expungement exception for "violations" involving bail forfeitures, which HCJDC claims establishes that expungement law applies to violations generally.  Urging against Barker's interpretation, HCJDC argues:  "[h]aving an exception to the expungement law for violations, even though the expungement law does not apply to violations, is absurd."  HCJDC also refers to the language of HRS § 846-2.5,[9] which defines HCJDC's role in collecting, storing, disseminating and analyzing criminal justice data to enable "law enforcement to utilize the tools needed to prevent <u>crimes</u> and detect criminals in support of the right of the public to be free from <u>crime</u> and the fear of <u>crime</u>."  (Emphases added).  HCJDC maintains that because "[t]he general and popular use of the word crime includes violations," and because criminal justice data "includes information on violations," the "only logical

---

[9]     HRS § 846-2.5 (2014), entitled "Purpose of the criminal justice data center," provides in pertinent part:

> (a) The Hawaii criminal justice data center, hereinafter referred to as the "data center", shall be responsible for the collection, storage, dissemination, and analysis of all pertinent criminal justice data from all criminal justice agencies, including, the collection, storage, and dissemination of criminal history record information by criminal justice agencies in such a manner as to balance the right of the public and press to be informed, the right of privacy of individual citizens, and the necessity for law enforcement agencies to utilize the tools needed to prevent crimes and detect criminals in support of the right of the public to be free from crime and the fear of crime.

> (b) The attorney general shall select and enforce systems of identification, including fingerprinting, of: all adults arrested for a criminal offense; all persons to whom penal summonses have been issued for a criminal offense and who have been convicted or granted a deferred acceptance of guilty or nolo contendere plea or a conditional discharge; and without the necessity of a court order, children who are twelve years of age or older who come within section 571-11(1) and who are taken into custody for committing an act that, if committed by an adult, would be a felony, a misdemeanor, or a petty misdemeanor.  The attorney general shall provide for the collection, recording, and compilation of data and statistics relating to crime.

interpretation" under expungement law "is to use the word crime in its ordinary sense."  HCJDC also argues that the Grindling Order is persuasive authority that HRS § 832-3.2 applies to violations.[10]

### A.  The term "crime" in the expungement statute, HRS § 831-3.2(a), is ambiguous.

The term "crime" is not defined in the expungement statute.  HRS § 831-3.2 only provides two definitions, for "arrest record" and "conviction" in subsection (g), and no other terms are defined.  HRS Chapter 831, entitled "Uniform Act on Status of Convicted Persons," has a definition section, HRS § 831-1, but its sole definition is for the word "felony."

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called in aid to explain what is doubtful in another."  HRS § 1-16 (2009); see State v. Glenn, 148 Hawaiʻi 112, 127, 468 P.3d 126, 141 (2020).  HRS § 831-3.2 and the Penal Code are laws in *pari materia*.  HRS § 831-3.2 employs Penal Code terminology throughout:  "crime" in subsection (a); subsection (a)(1) expungement exception referring to an arrest for a "felony" or "misdemeanor;" subsection (a)(2) expungement exception referring to a "petty misdemeanor" or "violation;" and subsection (a)(3) exception referring to an arrest for any "offense."  All of these terms are defined in the Penal Code.  The Penal Code statute HRS § 701-107, "Grades and classes of offenses," pertinently defines "crimes" in subsection (1) as

---

[10]    The Grindling Order stated:  "HRS § 831-3.2(a) does not permit expungement of petitioner's records of arrest for: . . . (2) HRS § 291C-85 and HRS § 291C-166, which are violations for which petitioner was found guilty . . . ."  2012 WL 1764177, at *1.  We acknowledge that this language appears to support HCJDC's position because it states that both of these offenses were "violations," the petitioner was found "guilty" of these "violations," and petitioner did not qualify for expungement of his arrest records.  There are no additional facts in the Grindling Order, however, and it is not precedent under Hawaiʻi Rules of Appellate Procedure Rule 35(c)(2) (providing that "unpublished dispositional orders are not precedent, but may be cited for persuasive value").

"felonies, misdemeanors, and petty misdemeanors," and also provides in subsection (5) that "[a] violation does not constitute a crime . . . ."  HRS § 831-3.2 also references Penal Code topics throughout the remaining subsections, such as: "redress under Chapter 661B" in subsection (a), which deals with "Redress for Wrongful Conviction and Imprisonment;" HRS § 706-607 involuntary hospitalization and HRS Chapter 704 acquittals based on a defendant's penal responsibility in subsection (a)(4); and HRS Chapter 853 deferred acceptance of guilty and no contest pleas in subsection (a)(5).

While it would seem obvious to apply the Penal Code meaning of "crime" to HRS § 831-3.2(a) given the degree to which the Penal Code is interwoven throughout the statute, we cannot do so because of subsection (2), which prohibits expungement for a five-year period for a "violation where conviction has not been obtained because of a bail forfeiture."  A plain reading of subsection (2) indicates that expungement applies to violations; and *a fortiori*, the term "crime" must include violations.

"[W]hen there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists."  JD, 149 Hawaiʻi at 96, 482 P.3d at 559.  There is doubt and uncertainty as to whether the term "crime" in the expungement statute includes violations per the language of subsection (a)(2), or excludes violations per the Penal Code.  It is not "plain or obvious" whether the Penal Code meaning applies to "crime" or whether it has an ordinary meaning.  Id.  Thus, the term "crime" is ambiguous, and we must examine the legislative history.  See id.; Woodfall, 120 Hawaiʻi at 394, 206 P.3d at 848.

> **B.  The legislature intended for expungement to apply to nonconvictions due to acquittals and dismissals.**

The legislative history reflects that the expungement law has always been intended to apply to nonconvictions.  When the statute was first enacted in 1974, the legislature explained the purpose was to expunge arrest records that did not lead to

convictions, in order to remove the "cloud of doubt" over such persons:

> SECTION 1. **Purpose.** <u>The purpose of this Act is to minimize or abolish extrajudicial penalties which may confront a person who has a record of arrest, even though such arrest did not lead to conviction. The expungement of such arrest record is necessary if the person is not to continue life under a cloud of doubt</u> placed over him by prospective employers, fraternal organizations, and the public in general. At the same time, it is realized as a practical matter, that all records pertaining to an arrest are not separable from other court, police, and public records. Pending the day when technological advances in recordkeeping are adopted by state and county agencies and permit a complete expungement of records pertaining to a person, this Act intends to accomplish at least a partial expungement coupled with a certificate issued to authorize declarations that as to a specific arrest, it did not occur.

1974 Haw. Sess. Laws Act 92, § 1 at 165 (emphasis added). The 1974 version of subsection (a) did not contain any of the exceptions (i.e. (a)(1) - (a)(5)) to expungement found in the current statute, and stated in pertinent part: **"Expungement orders.** (a) The attorney general, upon application from a person <u>arrested for, but not convicted of, a crime</u>, shall issue an expungement order annulling, canceling, and rescinding the record of arrest." <u>Id.</u> § 2 at 166 (emphasis added).[11] Thus, an arrest with a nonconviction qualified for expungement.

In the following year, 1975, the subsection (a) "crime" language was amended from "arrested for, but not convicted of, a crime" to "arrested for, but not charged or convicted of, a crime" and the first three exceptions to expungement found in the current statute were also added:

> **Sec. 731-3.2 Expungement orders.** (a) The attorney general, or his duly authorized representative within the department of the attorney general, upon written application from a person <u>arrested for, but not charged or convicted of, a crime</u>, shall issue an expungement order annulling, canceling, and rescinding the record of arrest and, within 60 days after receipt of such written application shall, when so requested, deliver, or cause to be delivered, all fingerprints or photographs of such person, unless such person has a record of prior conviction or is a fugitive from justice, in which case the fingerprints or photographs

---

[11] The original version of the expungement statute in 1974 was added as a new section in HRS Chapter 731. <u>See</u> 1974 Haw. Sess. Laws Act 92, § 1 at 165. The section was renumbered as HRS § 731-3.2 in 1975. <u>See</u> 1975 Haw. Sess. Laws Act 103, § 1 at 179. In 1976, HRS § 731-3.2 was renumbered as 831-3.2, which remains its current numbering today, as HRS § 831-3.2. <u>See</u> 1976 Haw. Sess. Laws Act 116, § 1 at 205.

> may be retained by the agencies holding such records; <u>provided that an expungement order shall not issue (1) in the case of an arrest of a felony or misdemeanor where conviction has not been obtained because of bail forfeiture, (2) for a period of five years after arrest or citation in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture; and (3) in the case of an arrest for any offense where conviction has not been obtained because he has rendered prosecution impossible by absenting himself from the jurisdiction</u>.

1975 Haw. Sess. Laws Act 103, § 1 at 179 (emphases added). The 1975 legislative history reflected that:

> The act's purpose is to protect the individual from extrajudicial penalties when a person has been <u>arrested for a crime but has not been charged or convicted</u>. The bill is intended to allow a person's records to be expunged, where he or she has been <u>arrested for and charged with a crime and subsequently has been acquitted or charges have been dismissed</u>.

Conf. Comm. Rep. No. 21, in 1975 Senate Journal, at 859; Conf. Comm. Rep. No. 18, in 1975 House Journal, at 885 (emphases added). The history reveals that the legislature expressly contemplated that the situations where arrest would not result in conviction were acquittals and dismissals. Conf. Comm. Rep. No. 21, in 1975 Senate Journal, at 859; Conf. Comm. Rep. No. 18, in 1975 House Journal, at 885. The legislature also adopted the first three exceptions to the expungement law pursuant to the recommendation of the "State Prosecuting Attorneys' Committee," "to preclude expungement in cases where a person has not been convicted because of a bail forfeiture or because he has absented himself from the jurisdiction." Conf. Comm. Rep. No. 21, in 1975 Senate Journal, at 859; Conf. Comm. Rep. No. 18, in 1975 House Journal, at 885.

In 1976, the subsection (a) "crime" language in the expungement statute was amended from "arrested for, but not charged or convicted of, a crime" to its current wording "arrested for, or charged with, but not convicted of, a crime," as follows:

> "(a) The attorney general, or his duly authorized representative within the department of the attorney general, upon written application from a person <u>arrested for, or charged with, but not convicted of, a crime</u>, shall issue an expungement order annulling, canceling, and

13

> rescinding the record of arrest; provided that an
> expungement order shall not issue . . . [(listing three
> exceptions)]

1976 Haw. Sess. Laws Act 116, § 1 at 205 (emphasis added).  The
1976 amendment clarified questions regarding return and retention
of fingerprints and photographs subject to an expungement order.
See id.  With regard to the change to the subsection (a) "crime"
language, the legislature explained that it "concurs that the
procedure of expungement of arrest records apply only to a person
who has been charged with, but not convicted of a crime."  H.
Stand. Comm. Rep. No. 490-76 in 1976 House Journal, at 1490.

In 1987, the legislature added the fourth exception to
the expungement statute, subsection (a)(4), that prohibited
expungement:  "in the case of a person acquitted by reason of a
mental or physical defect under chapter 704."  1987 Haw. Sess.
Laws Act 322, § 1 at 994.  In 1993, the legislature added the
fifth exception to the expungement statute, subsection (a)(5),
that prohibited expungement "[f]or a period of one year upon
discharge of the defendant and dismissal of the charge against
the defendant in the case of a deferred acceptance of guilty plea
or nolo contendere plea, in accordance with chapter 853."  1993
Haw. Sess. Laws Act 7, § 1 at 20.

Thus, the legislative history of HRS § 831-3.2 shows
that expungement is for nonconvictions, and "not convicted,"
meant acquittals and dismissals.  Conf. Comm. Rep. No. 21, in
1975 Senate Journal, at 859; Conf. Comm. Rep. No. 18, in 1975
House Journal, at 885.  The legislature added the first three
exclusions from expungement carving out nonconvictions for bail
forfeiture and absence.  See 1975 Haw. Sess. Laws Act 103, § 1 at
179; HRS § 831-3.2(a)(1)-(a)(3).  The legislature then added a
fourth exclusion for nonconvictions due to involuntary
hospitalization acquittals and Chapter 704 dismissals.  See 1987
Haw. Sess. Laws Act 322, § 1 at 994; HRS § 831-3.2(a)(4).
Finally, the legislature added a fifth exclusion, for
nonconvictions due to Chapter 853 deferral dismissals.  See 1993
Haw. Sess. Laws Act 7, § 1 at 20; HRS § 831-3.2(a)(5).  The
legislative history shows that nonconvictions has consistently
meant acquittals and dismissals.  Even as the legislature carved

out exceptions to the expungement statute, the original intent that expungement apply to <u>non</u>convictions has never changed. Nothing in the legislative history reveals any intent that a conviction for a violation should also qualify as a nonconviction for purposes of expungement.

> **C.  Reading the term "crime" to include violations is rational, reasonable, and consistent with legislative intent.**

A "rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable, because the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality."  <u>In re Doe</u>, 90 Hawai'i 246, 251, 978 P.2d 684, 689 (1999) (internal citations, brackets and quotation marks omitted).  Construing the word "crime" with an ordinary meaning to include "violations" is consistent with legislative intent, and is a rational and reasonable interpretation of the statute.  Interpreting the word "crime" as excluding violations, however, is inconsistent with legislative intent, and contradicts subsection (a)(2) that includes violations as qualifying offenses under the expungement statute.  <u>See</u> <u>id.</u>

"It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute."  <u>Franks v. City and County of Honolulu</u>, 74 Haw. 328, 330, 843 P.2d 668, 669 (1993) (citations omitted).  The only rational construction of the term "crime" that gives effect to all parts of the statute, including the subsection (a)(2) expungement exception for violations due to bail forfeiture, is for "crime" to have an ordinary meaning, which includes violations.  It would be irrational and illogical to exclude violations due to bail forfeiture from expungements, without a general rule allowing expungement of violations.  <u>See</u> <u>id.</u>; <u>Doe</u>, 90 Hawai'i at 251, 978 P.2d at 689.

For these reasons, we conclude that an ordinary meaning applies to the term "crime" in HRS § 831-3.2(a), and not the Penal Code meaning of "crime" under HRS § 701-107. Because Barker's application for expungement of his Harassment arrest resulted in a guilty conviction for Disorderly Conduct as a violation, Barker did not meet the statutory expungement criteria that he was "not convicted of a crime[.]" HRS § 831-3.2(a). The Circuit Court thus did not err as a matter of law when it granted HCJDC's cross-motion for summary judgment and denied Barker's summary judgment on his complaint seeking expungement. See Ralston, 129 Hawaiʻi at 55, 292 P.3d at 1285.

For the foregoing reasons, we affirm the Judgment and Order Denying Plaintiff-Appellant's Motion for Summary Judgment and Granting Defendant-Appellee's Motion for Summary Judgment, both entered and filed on March 1, 2021 by the Circuit Court of the First Circuit.

On the briefs:

Samuel P. King, Jr.
for Plaintiff-Appellant

Candace J. Park
Deputy Attorney General
for Defendant-Appellee

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge