235 P.3d 365

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Sean K. HITCHCOCK, Defendant–Appellant.**

**No. 29847.**

Supreme Court of Hawai'i.

July 30, 2010.

Karen T. Nakasone, Deputy Public Defender, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, for plaintiff-appellee.

MOON, C.J., NAKAYAMA, DUFFY, and RECKTENWALD, JJ.; ACOBA, J., concurring separately.

Opinion of the Court by MOON, C.J.

Defendant-appellant Sean K. Hitchcock appeals from the District Court of the First

Circuit's[1] April 27, 2009 judgment convicting him of and sentencing him for illegal camping, in violation of Revised Ordinances of Honolulu (ROH) § 10–1.2(a)(13) (2009) [hereinafter ROH § 10–1.2(a)(13) or the ordinance], quoted *infra*. Upon application by Hitchcock, the case was transferred to this court, pursuant to Hawai'i Revised Statutes (HRS) § 602–58(b)(1) (Supp.2009).[2]

Briefly stated, Hitchcock is a homeless man who, at the time of trial, permanently camped at the Kea'au Beach Park [also referred to as the beach park, or the park] in Wai'anae, on the island of O'ahu. Every three weeks for approximately twenty months, Hitchcock was issued a camping permit from the City and County of Honolulu that allowed him to continue camping at the beach park. On the night of Wednesday, January 14, 2009, Honolulu Police Department (HPD) Officer Dennis Carino (Officer Carino) entered the beach park and cited Hitchcock for illegal camping, in violation of ROH § 10–1.2(a)(13).[3] The citation was based on a rule set forth in camping permits that prohibited camping on Wednesdays and Thursdays to allow the Department of Parks and Recreation to perform park maintenance. On April 27, 2009, Hitchcock was orally charged with illegal camping and pleaded not guilty. At the conclusion of a one-day bench trial, Hitchcock was convicted of illegal camping and fined $25.

On appeal, Hitchcock argues that his conviction should be reversed because: (1) his oral charge was defective in that it failed to state an offense; (2) there was no "substantial evidence of the requisite attendant circumstance element" of the ordinance that Hitchcock camped "at a park not designated as a campground"; and, (3) assuming there was sufficient evidence to convict him, the trial court erred when it failed to apply the "choice of evils" defense to his case. Hitch-

1. The Honorable Lono J. Lee presided over the underlying proceedings.

2. HRS § 602–58(b)(1) provides that:

The supreme court, in a manner and within the time provided by the rules of court, may grant an application to transfer any case within the jurisdiction of the intermediate appellate

court to the supreme court upon the grounds that the case involves:

(1) A question of first impression or a novel legal question.

3. ROH § 10–1.2(a)(13) provides that, "[w]ithin the limits of any public park, it is unlawful for any person to ... [c]amp at any park not designated as a campground[.]"

cock further argues that, in any event, ROH § 10–1.2(a)(13) is unconstitutional as applied to him because it is vague, overbroad, and constitutes cruel and unusual punishment. Although there were other offenses that could have been charged in this case, *see infra* note 5, we conclude that there was insufficient evidence to show that Hitchcock violated ROH § 10–1.2(a)(13).

Thus, for the reasons discussed *infra*, we reverse the trial court's April 27, 2009 judgment and sentence.

## I. *BACKGROUND*

On April 27, 2009, Hitchcock was orally charged during arraignment with illegal camping, in violation of ROH § 10–1.2(a)(13), based on his presence at Kea'au Beach Park after 10:00 p.m. on Wednesday, January 14, 2009. Specifically, the prosecution orally charged Hitchcock as follows:

> Mr. Hitchcock, on January 14, 2009, within the limits of a public park, you did intentionally, knowingly, or recklessly camp in any area not designated as a campground thereby committing the offense of illegal camping in violation of Section 10–1.2(a)(13) of the [ROH].

Hitchcock indicated that he understood the charges against him and, thereafter, pleaded not guilty.

A bench trial then commenced and lasted one day. Plaintiff-appellee State of Hawai'i's (the prosecution) case-in-chief consisted of one witness, Officer Carino.

On direct examination, Officer Carino testified that, on the night of January 14, 2009, he was working near Kea'au Beach Park in the City and County of Honolulu, and his assignment was "basically to give citations to people that [were] not supposed to be camping in the park." When asked how he knew Hitchcock was camping in a public park, Officer Carino stated that he encountered Hitchcock in a tent in the beach park and saw that Hitchcock was going in and out of the tent. Officer Carino indicated that Hitchcock expressly admitted that the tent belonged to him. Officer Carino additionally testified that he ascertained the limits of the beach park from the signs "all over the

park." According to Officer Carino, there were signs in the park that "g[a]ve the rules of the park, no camping, um, no golfing, no alcohol." However, he testified that there is an area designated for camping in the park and admitted that Hitchcock's tent, which was set up "right next to the restroom" and "right near the parking lot," was "within the campsite area" of the beach park.

When asked about his interaction with Hitchcock, Officer Carino indicated that he asked Hitchcock for his camping permit, but Hitchcock did not give him a permit. He indicated that he could not remember whether Hitchcock actually had a permit. Officer Carino explained that:

> Basically, [Hitchcock] was . . . in the park at a time where . . . no one's supposed to be camping. Even if you have a permit, the permit's only good for so much—for certain days of the week. And, uh, on Wednesday nights and Thursday nights no one's supposed to be in the park for maintenance of the park. So even if they have a permit, the permit does not state those days that you are allowed to stay in there with a permit.

When asked why he did not issue Hitchcock a "closed park citation," Officer Carino testified that Kea'au Beach Park does not have "closed hours." Finally, he indicated that, based on his observations, he issued Hitchcock a citation for illegal camping in violation of ROH § 10–1.2(a)(13), but did not arrest him.

During cross-examination, Officer Carino reiterated that Hitchcock was "in one of the designated camping areas" of the beach park when he issued Hitchcock a citation. Additionally, Officer Carino testified that he was familiar with Hitchcock and that he had "run into him" prior to the night in question. He stated that Hitchcock had informed him that he was homeless and essentially lived at the beach park.

With respect to Hitchcock's permit on the night in question, Officer Carino again stated that he could not remember whether Hitchcock presented a permit when he issued the citation, but indicated that Hitchcock "usually does have a permit." He indicated that, in

any event, "there's absolutely no way you can get a permit there [at the beach park] on Wednesday and Thursday" because the State does maintenance on those days. Also during Officer Carino's cross-examination, the trial court took judicial notice of the fact that January 14, 2009 was a Wednesday night.

The prosecution conducted a brief re-direct examination, during which time it sought to enter into evidence a certified letter from the Department of Parks and Recreation (the department) stating that no camping is allowed at the beach park on Wednesdays and Thursdays. The prosecution argued that such letter should be entered into evidence as a self-authenticating document, and Hitchcock did not object. The trial court granted the prosecution's request to enter the letter into evidence.[4]

The prosecution also questioned Officer Carino about Hitchcock's history in the park, to which Officer Carino reiterated that he had encountered Hitchcock in the park before and that he usually has a permit. Officer Carino explained that the citation at issue was the only time he had cited Hitchcock and that "generally everybody there [in the park]" has permits "for the days allowed for camping there."

During re-cross examination, Hitchcock asked Officer Carino whether the "Wednesday/Thursday" no camping rule was statewide. Officer Carino stated, "I don't know if it[']s statewide. I don't know that. I know for the parks for that—for Kea'au Beach Park it is." Officer Carino additionally indicated that "the permit will state ... what days they're allowed there and what days they're not allowed there." Finally, he stated that, "to [his] knowledge," the Wednesday and Thursday camping restriction was the result of a new camping statute that took effect in September 2008. No further inquiries or explanations regarding the "new camping statute" were provided at that time.

Immediately following Officer Carino's testimony, the prosecution rested its case. Hitchcock then made an oral motion for judgment of acquittal, arguing that:

Although it seems the [prosecution] has met all the elements, uh, to prove this crime and especially in the light most favorable to the [prosecution] ..., I would just say that, uh, and it will become clear after Mr. Hitchcock has a chance to testify, the statute itself is unfair. It unfairly targets the homeless people who have nowhere else to go. On Wednesday and Thursday they're basically, uh—they're basically out of luck.

The prosecution rested on the evidence presented, expressing its belief that it had "met all the elements *prima facie.*" The trial court orally denied Hitchcock's motion, stating that the prosecution "has made a *prima facie* case. Viewed in the strongest light, they've made their case."

Hitchcock then elected to testify on his own behalf and was the sole witness for the defense. Regarding his background, Hitchcock stated during direct examination that he was 41 years old, born in Hawai'i, and held a master's degree in traditional Chinese medicine. He indicated that he served "eight years active duty" in the army as a special forces operative and "previous to that ... served four years Air Force Auxiliary as a search and rescue individual." During his military career, he suffered injuries, including a broken back and multiple head traumas, that rendered him permanently ninety percent disabled. Hitchcock testified that he was employed until May of 2001, but became unable to work due to his disability. He indicated that he subsequently entered a vocational rehabilitation program and tried to find employment, but, when he became homeless, he was removed from the program.

When asked about his homelessness, Hitchcock testified that he had been living in an apartment in Wai'anae, but was evicted when his landlord found out that he was on probation for committing a class C felony. According to Hitchcock, he then went to several rental companies, but none of them would rent an apartment to him, even though he had good credit, because of "other circum-

4. Although the transcript indicates that the prosecution's request was granted and seems to indicate that the letter was entered into evidence, there is no such letter contained in the record on appeal, nor is there any indication that the exhibit was, in fact, received into evidence.

stances," which, in Hitchcock's view, meant they did not want to rent to a person who was on probation. He further testified that he tried to get into shelters run by the military and other programs, but was rejected because he is on narcotic pain medication for his disability and that shelters have a "zero tolerance policy" for narcotic use, regardless of the reason or necessity. Upon being asked whether there were "any other avenues to find housing" that he had not yet exhausted, he indicated that he was the first veteran on O'ahu to apply for the "HUD–C" veteran housing program initiated by President Obama, but stated that such request was still pending and that, at the time of trial, there was no affordable housing available to him.

Hitchcock then testified that he currently resided at "Campsite 13 at Kea'au Beach Park." He explained that, in order to stay at the beach park, he "go[es] down to the Satellite City Hall every three weeks on a Friday, and they issue three[ ]weeks worth of permits. And, um, I've done that now for about the past [nineteen, twenty] months." Hitchcock further indicated, with respect to the "new camping statute" mentioned during Officer Carino's testimony, that "nothing has changed from the old statute. ... [The restriction on camping has] always been Wednesday/Thursday. That has never changed." He explained that, although the parks and recreation department claims that Wednesdays and Thursdays are reserved for park maintenance: (1) there has been no maintenance done for the past five years or more at the beach park; (2) "last summer they took away both of our park employees"; and (3) it is "up to [the people staying at the beach park] to ... help clean the park."

As to the citation he received, Hitchcock testified that he understood that he was taking a risk by being at the beach park on Wednesday and Thursday, but stated that he "honestly ha[d] nowhere else to go." He explained that, in the past, he has asked the HPD where he can go on Wednesday and Thursday and, in response, the officers have told him to go to a shelter or "go in the bush somewhere maybe" because that area would not be handled by the HPD; thus, Hitchcock indicated that the HPD "just kinda [sic] pushed the issue around."

During cross-examination, Hitchcock admitted that he was camping at the beach park on the night he received the citation and admitted that the beach park is a public park. When asked if he had a permit, he stated that "nobody has a permit on those days." On re-direct, Hitchcock reiterated that the beach park had been his residence for the past nineteen or twenty months and stated that "[a]ll the police officers know me there." At the close of his testimony, Hitchcock rested his case.

The prosecution then presented its closing argument, stating that:

> Your Honor, I believe [the prosecution] has met beyond a reasonable doubt its burden not only based on the officer's testimony but also on the defendant's own admission during testimony. He knew he was camping. ... He knew it was a park camping ground or a public park and it wasn't—and camping wasn't allowed at that time. There's no doubt that he violated the statute. I think the question the defense raises is a broader constitutional question which definitely should be raised. I'm just not sure that this court has—can address it.

In response, Hitchcock stated:

> Your Honor, that's true. The statute, as applied to people in Mr. Hitchcock's circumstances, is totally unconstitutional and leaves him with no options but to break the law. Based on the fact that he is ... in these circumstances as he testified, he simply has no other choice. I'm going to ask the [trial] court to find him not guilty on that basis.

> It's also a choice of evils thing, Your Honor. He's got no other options but to break the law. He's asked where can he go. There's nowhere else to go. He can't go to the shelters, as he testified, because he's on this medication. He's clearly, uh, taken many measures to try not to break the law. He gets his permit every day for the days that the State allows him to be there. He's simply left with no other option but to be living where he's living.

There's nowhere for him to go, and he has tried.

So I would raise a constitutional basis by just stating simply it is a choice of evils thing. He has no choice. His circumstances are such that he is forced to live in the park on Wednesdays and Thursdays, and that subjects him to these penalties. And, uh, Your Honor, I'd ask the [trial] court to find him not guilty. The intent is not there. He's simply left without a choice.

In rebuttal, the prosecution addressed Hitchcock's choice of evils argument, stating that

[Hitchcock] has failed to specify what the alternate evil is, so I'm not sure I can clearly address it because the evil that's being prevented by the law has to—or the evil that is avoided by breaking the law has to clearly outweigh the evil being prevented by the law. Unless defense articulates the second evil, I'm not sure the [prosecution] can clearly respond.

The trial court "found first of all the [prosecution] is correct that the choice of evils defense is not applicable [be]cause there is no other alternative evil that is facing Mr. Hitchcock." The trial court went on to conclude that:

Certainly this [trial] court is sensitive to your position, Mr. Hitchcock, but on the issue of the ordinance it was clearly violated. And even in your testimony you admit that. I don't see that there's a discriminatory basis or a constitutional issue before this [trial] court. Okay.

The [trial] court does find that the [prosecution] has made its case, proved its case beyond a reasonable doubt, and you're guilty as charged.

The trial court then asked Hitchcock if he wanted to address the trial court as his "right of allocution."

Hitchcock chose to address the trial court, stating, in relevant part, that:

There are many points about this case that I would like to bring up with the [trial] court but probably isn't applicable [sic] at this time about how this is done. But this is being driven by political forces.

The task force that comes down is directed by the mayor at this time. They only come down on the Wednesday and Thursday and they only target the grassed area of the park, the actual park.

They don't give tickets to the people who live to the north of the park which there's over two hundred people on a mile-long stretch of beach doing the same thing we're doing. They never go in there to ticket them ever. So I mean there are many issues at hand here.

I'd like to again reiterate what counsel here has said about the constitutional issue about the criminalization of the homeless. And I feel this is why I brought this before Your Honor, to this court, to your attention that it does seem cruel and unusual under the Fourth Amendment to criminalize the homeless. And that's been a federal and national prerequisite—not prerequisite, but that is what has been happening now across the nation in various criminal courts.

There's an abundance of case law on this subject and other things like the Fourteenth Amendment, freedom of movement, et cetera, and that's what we are trying to establish here. But that's exactly why I pled not guilty to try to get out of the park. And I think all the police officers who the task force say no, we've talked at considerable length. ... I rest my case on that.

The prosecution did not respond, but requested that the mandatory fine of $25 be imposed. Hitchcock then requested that the fine, if imposed, be suspended. The trial court then imposed a $25 fine on Hitchcock, but suspended the fine "for a period of seven days on the condition no other similar violations [sic]." On the same day (April 27, 2009), the trial court entered its written judgment and sentence in accordance with its oral ruling.

On May 22, 2009, Hitchcock filed a timely notice of appeal from the trial court's April 27, 2009 judgment. Upon motion by Hitchcock pursuant to HRS § 602–58(b)(1), the case was transferred to this court on February 24, 2010. Oral argument was held on May 6, 2010.

## II. STANDARDS OF REVIEW

### A. Oral Charge

"It is well settled that an accusation must sufficiently allege all of the essential elements of the offense charged." *State v. Sprattling*, 99 Hawai'i 312, 316, 55 P.3d 276, 280 (2002) (citing *State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996)). Stated differently,

the sufficiency of the charging instrument is measured, *inter alia*, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process. Whether an indictment sets forth all the essential elements of a charged offense is a question of law, which we review under the *de novo*, or "right/wrong," standard.

*Id.* (citing *State v. Kaakimaka*, 84 Hawai'i 280, 293–94, 933 P.2d 617, 630–31 (1997)) (other citations, internal brackets, and ellipses omitted).

### B. Sufficiency of the Evidence

This court has repeatedly stated that, in reviewing the legal sufficiency of evidence to support a conviction,

evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Hicks*, 113 Hawai'i 60, 70, 148 P.3d 493, 503 (2006) (citation omitted). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* (citation omitted).

### C. Statutory Interpretation

"The interpretation of a statute is a question law reviewable *de novo.*" *State v. Woodfall*, 120 Hawai'i 387, 391, 206 P.3d 841, 845 (2009) (citations omitted). Further, statutory construction is guided by the following rules:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Id.* (quoting *Carlisle v. One (1) Boat*, 119 Hawai'i 245, 256, 195 P.3d 1177, 1188 (2008)) (other citations omitted).

## III. DISCUSSION

As previously indicated, Hitchcock argues that the trial court erred and that his conviction should be reversed because: (1) his oral charge was defective in that it failed to state an offense; (2) there was no "substantial evidence of the requisite attendant circumstance element" of the ordinance that Hitchcock camped "at a park not designated as a campground"; and, (3) assuming there was sufficient evidence to convict him, the trial court erred when it failed to apply the "choice of evils" defense to his case. Hitchcock further argues that, in any event, ROH § 10–1.2(a)(13) is unconstitutional as applied to him because it is vague, overbroad, and constitutes cruel and unusual punishment.

## A. Oral Charge

On appeal, Hitchcock argues that the prosecution's oral charge prior to the start of trial was defective inasmuch as "the charge contained language fatally different from the ordinance[ ] when it alleged that the camping occurred *'in any area* not designated as a campground'" and "failed to specify the essential element of ROH § 10–1.2(a)(13)[ ] that camping occur *'at any park* not designated as a campground.'" (Emphases in original.) According to Hitchcock, "the distinction between 'park' and 'area' was a material difference, because the [prosecution's] proof was that Hitchcock camped in an 'area' where camping was prohibited on that particular day." Thus, Hitchcock argues that "the conviction herein, based on the defective charge, violated Hitchcock's constitutional rights to fair notice of the charge against him and his due process right to a fair trial" as provided in both the federal and state constitutions. Finally, Hitchcock acknowledges that he did not object to the oral charge at trial, but claims that the "fatal charging error" affected Hitchcock's substantial rights and should be addressed by this court based on plain error.

In response, the prosecution argues that, because Hitchcock's objection to his oral charge was raised for the first time on appeal, this court's decision in *State v. Motta*, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983) (providing that the charge should be "liberally construed in favor of validity" and that the conviction thereon will not be reversed without the defendant's showing of prejudice) should apply in this case. (Citing *Motta*, 66 Haw. at 90–91, 657 P.2d at 1019–20; *Merino*, 81 Hawai'i at 212, 915 P.2d at 686) (other citations omitted). Applying the test set forth in *Motta*, the prosecution argues that the oral charge "can reasonably be construed to charge illegal camping in a public park" because Hitchcock "represented at trial that he understood the charge, entered a plea of not guilty to the charge, and admitted to camping illegally at the public park on the night he received a citation." The prosecution further contends that Hitchcock "has failed to even allege, much less demonstrate, any prejudice resulting from the oral

charge's incomplete reference." As such, the prosecution argues that "[Hitchcock]'s claim that the oral charge was insufficient and the case reversed on that basis should be rejected."

In his reply, Hitchcock avers that the prosecution "misapplies the [*Motta* ] liberal construction rule to the instant case" because the *Motta* rule applies only to a charge that "merely omits a word rather than an essential element, or to a defect of mere form and not substance; [such] defects ... are subject to [a] harmless error analysis, and a defendant who challenges such defects for the first time on appeal must demonstrate substantial prejudice." Because (in Hitchcock's view) the defect in the oral charge "was clearly not one of mere form, but is one of 'substantive subjective [sic] matter jurisdiction, which may not be waived or dispensed with, and that is *per se* prejudicial,'" (citing *State v. Cummings,* 101 Hawai'i 139, 143, 63 P.3d 1109, 1113 (2003)) (other citations omitted), Hitchcock argues that the *Motta* liberal construction analysis "is inapposite." In the alternative, Hitchcock argues that the *Motta* test has been met in this case because: (1) the defective oral charge was prejudicial in that it was "indisputably material, and the improper substitution [of] 'area' for the term 'park'[ ] caused [Hitchcock] to be convicted rather than acquitted"; and (2) "[t]he oral charge, which does not track the ordinance as to the critical term 'park,' cannot within reason be construed to charge a crime."

Article I, section 14 of the Hawai'i Constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." *See also* U.S. Const. amend. VI. "[I]t is well settled that an 'accusation must sufficiently allege all of the essential elements of the offense charged,' a requirement that '[applies] whether an accusation is in the nature of an oral charge, information, indictment, or complaint.'" *State v. Ruggiero,* 114 Hawai'i 227, 239, 160 P.3d 703, 715 (2007) (quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)) (other citations omitted). As such, "the sufficiency of the charging instrument is measured, *inter alia,* by 'whether it contains the

elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet.'" *Ruggiero,* 114 Hawai'i at 239, 160 P.3d' at 715 (citing *State v. Wells,* 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995)) (internal brackets omitted).

■■ As pointed out by the prosecution, this court has adopted a "liberal construction approach" when the sufficiency of an indictment was challenged for the first time on appeal. *See Motta,* 66 Haw. at 90, 657 P.2d at 1020. In *Motta,* this court explained that the "adoption of this liberal construction standard for post-conviction challenges to indictments means we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.* at 91, 657 P.2d at 1020. In *State v. Elliott,* 77 Hawai'i 309, 884 P.2d 372 (1994), this court extended the *Motta* "liberal construction" approach to the sufficiency of oral charges, holding that, because the defendant did not challenge the sufficiency of his oral charges until after the trial, the review of the defendant's argument would be governed by the "liberal construction standard" set forth in *Motta, id.* at 311, 884 P.2d at 374. The *Elliott* court additionally provided guidance in applying the liberal construction standard, concluding that "[o]ne way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole." *Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 (emphasis added). Further, in *State v. Sprattling,* 99 Hawai'i 312, 55 P.3d 276 (2002), this court expressed that the *Motta* "post-conviction liberal construction standard" "essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction." *Id.* at 318, 55 P.3d at 282. Relying on *Motta,* the *Sprattling* court stated that, "[i]n determining whether an offense has been sufficiently pleaded, this court has departed from strict technical rules construing the validity of an oral charge. ... Rather, we now interpret a charge as a whole, employing practical considerations and common sense."

Despite Hitchcock's claims that *Motta* applies only to "a defect of mere form and not substance," we found no such limitation in *Motta* or the cases applying it. Thus, inasmuch as it is undisputed that Hitchcock did not object to the oral charge at the trial level and, instead, raises his argument for the first time on appeal, the *Motta* liberal construction approach applies in this case.

■■ As previously indicated, the prosecution entered the following oral charge on the record:

Mr. Hitchcock, on January 14, 2009, within the limits of a public park, you did intentionally, knowingly, or recklessly camp *in any area* not designated as a campground thereby committing the offense of illegal camping in violation of Section 10–1.2(a)(13) of the [ROH].

(Emphasis added.) ROH § 10–1.2(a)(13) provides that, "[w]ithin the limits of any public park, it is unlawful for any person to ... [c]amp *at any park* not designated as a campground[.]" (Emphasis added.) Comparing the plain language of the oral charge to the ordinance, it is clear that, as Hitchcock points out, the prosecution used the word "area," instead of "park" and, thus, misstated a word in ROH § 10–1.2(a)(13). However, the prosecution also stated that Hitchcock was being charged for conduct that was committed *"within the limits of a public park."* By indicating that the conduct for which Hitchcock was charged had to have occurred within the limits of a public park, the oral charge can be read (and liberally construed) as indicating that Hitchcock was illegally camping in a *park* that was not designated as a campground (not merely an area not designated as a campground). Thus, examining the charge as a whole, it cannot be said that the prosecution's alteration of a *single word,* i.e., "area" instead of "park," rendered the oral charge so defective that it did not state an offense. Thus, applying the liberal construction standard, the oral charge can, within reason, be construed to charge the offense of illegal camping pursuant to ROH § 10–1.2(a)(13).

■■ Given the aforementioned conclusion, we now turn to examine whether, in the alternative, Hitchcock demonstrated that he

was prejudiced by the oral charge. We observe, as stated by the prosecution, that Hitchcock has not presented any evidence that the prosecution's use of the word "area" instead of "park" prejudiced, surprised, or hampered his defense in any way. Indeed, we fail to see how the substitution of the word "park" could materially affect or harm Hitchcock's right to be informed of the charges against him, especially given that the prosecution included the phrase "public park" within the charge. Therefore, Hitchcock failed to demonstrate that he was somehow prejudiced by the prosecution's misstatement in his oral charge. In sum, it cannot be said that the prosecution's use of the word "area" rather than "park" rendered the oral charge so unclear that it "by no reasonable construction can ... be said to charge the offense for which conviction was had."

> Moreover, this court has stated that,

> in determining whether the accused's right to be informed of the nature and cause of the accusation against him [or her] has been violated, *we must look to all of the information supplied to him [or her] by the State to the point where the court passes upon the contention that the right has been violated.*

*State v. Israel,* 78 Hawai'i 66, 70, 890 P.2d 303, 307 (1995) (emphasis added) (citing *State v. Treat,* 67 Haw. 119, 120, 680 P.2d 250, 251 (1984); *State v. Robins,* 66 Haw. 312, 317, 660 P.2d 39, 42–43 (1983)) (other citation omitted) (brackets in original). This court additionally stated that a defendant's right to be informed of the nature and cause of the accusation can be deemed satisfied if the record "clearly demonstrate[s] the defendant's *actual knowledge*" of the charges against him or her. *Id.* at 71, 890 P.2d at 308.

Inasmuch as Hitchcock argued the oral charge was defective (and his constitutional rights had been violated) for the first time on appeal, we turn to examine the information provided or "supplied" by the prosecution to Hitchcock prior to appeal. The record indicates that Officer Carino testified at trial that Hitchcock was within the limits of a beach park at the time he was issued a citation. Officer Carino further testified that

> *[Hitchcock] was ... in the park at a time where ... no one's supposed to be camping.* Even if you have a permit, the permit's only good ... for certain days of the week. And, uh, on Wednesday nights and Thursday nights no one's supposed to be in the park for maintenance of the park.

(Emphasis added.) Officer Carino indicated that, based on his observations of Hitchcock camping in the beach park on a prohibited night, he issued Hitchcock a citation for illegal camping in violation of ROH § 10–1.2(a)(13).

Such testimony by Officer Carino clearly informed Hitchcock that he was being charged with camping in the beach park when the *park itself* was not designated as a campground. Indeed, it would be absurd for Hitchcock (or anyone) to believe he was being charged with camping merely in an area of a park not designated as a campground when Officer Carino specifically stated that the basis for his citation of Hitchcock was Hitchcock's presence in the beach park at a time the *park* was not designated as a campground. Consequently, the prosecution provided Hitchcock with information such that he could understand the nature of the charges against him. Furthermore, Hitchcock indicated during his arraignment that he understood the charges against him. He testified at length regarding his presence at the beach park, admitted that no one has a permit to camp in the beach park on Wednesdays and Thursdays, and indicated that he understood he was taking a risk by remaining in the beach park on the night in question. Such testimony shows that Hitchcock was aware that his citation was based, at least in part, on his continued presence at a public park—not merely in any "area." Therefore, the record "clearly demonstrates" that Hitchcock had "actual knowledge of the charges against him." *Israel,* 78 Hawai'i at 71, 890 P.2d at 308.

Inasmuch as: (1) the oral charge, when liberally construed, states the offense of illegal camping and provided Hitchcock with notice that he was being charged with camping in a "park" not designated as a camp-

ground; (2) there is no evidence in the record that the prosecution's use of the word "area" instead of "park" "substantially prejudiced" Hitchcock; and, (3) in any event, the record indicates that Hitchcock had actual knowledge of the nature of the charges against him, we conclude the oral charge was not defective. Consequently, we cannot agree with Hitchcock that his constitutional rights to a fair trial and to have fair notice of the charge against him were violated.

## B. *Sufficiency of the Evidence*

■ On appeal, Hitchcock argues that there was insufficient evidence to support his conviction because the prosecution "had to prove, as an attendant circumstance of the offense, that Kea'au Beach Park was 'not designated as a campground,'" and the prosecution "failed to meet its burden." More specifically, Hitchcock contends that

[t]he overwhelming evidence at trial established the converse of what the [prosecution] was supposed to prove. All testimony adduced on this point[ ] supported the indisputable conclusion[ ] that Kea'au Beach Park was designated as a campground—the opposite of the attendant-circumstance-element of a non-campground designated park that the [prosecution] was supposed to prove. [Officer Carino] described how camping was permitted at designated campsites throughout the park, and that Hitchcock's tent was within such a campsite. The city department issued camping permits for camping in this park, and the officer said Hitchcock had such a

permit. The very fact that a city department issued permits allowing for camping in the park[ ] establishes that the park is designated as a campground.

Even when viewed in the light most favorable to the [prosecution], the reference that there were "no camping" signs throughout the park, and that camping permits generally were not valid on the particular day Hitchcock was cited ... did not prove that the park was "not designated as a campground." ... There was no notice within the ordinance[ ] conveying the supposed prohibitions ..., *i.e.*, that absolutely no camping was allowed on Wednesdays and Thursdays, or that camping within the designated campsite areas of the park was otherwise allowed on all other days, or that the permit contained a specific advisement regarding the Wednesday/Thursday camping ban.

Hitchcock further argues that Officer Carino's "reference to permits not being valid on the day that Hitchcock was cited *only shows that Hitchcock appears to have violated the terms of the permit*, and is not material to the issue ... whether Kea'au Beach Park was designated as a campground[ ] or not." (Emphases added).[5] Thus, Hitchcock claims that the prosecution's evidence "fails to establish guilt, even in the light most favorable to the [prosecution]" and that the lack of substantial evidence "violated Hitchcock's due process right not to be convicted except on proof of every element beyond a reasonable doubt."

5. Before the ICA, Hitchcock observed that

[o]ther pertinent provisions exist within the statutory scheme of [the] ROH, which clearly address the conduct the prosecution was attempting to prosecute herein. ROH § 10–1.3(a)(2) states that a permit is required for camping: "Any person using the recreational and other areas and facilities under the control, maintenance, management and operation of the department of parks and recreation shall first obtain a permit from the department for the following uses: ... (2) Camping[.]" ROH § 10–1.3(c) clearly articulates the consequence for violation of the terms of a permit, as follows: "Any violation ... of the terms or condition contained in the permit which violation is caused by the permittee, ... [ ]shall constitute ground for revocation of the permit by the director of parks and recreation." ROH § 10–

1.6(a) provides for the penalty of criminal prosecution for "any person convicted of a violation of any section or provision of this article shall be punished by a fine of not more than $500.00 or by imprisonment for not more than 30 days, or by both such fine and imprisonment."

If Hitchcock's permit had indeed stated that the permit was not valid on Wednesdays and Thursdays, and Hitchcock then violated the terms of the permit by camping in the park on those days, the State could both revoke the permit under ROH § 10–1.3(c), and the State could attempt prosecution under ROH § 10–1.6(a) for the permit violation, which appears to be the appropriate charging mechanism under the facts herein, rather than ROH § 10–1.2(a)(13).

In its answering brief, the prosecution argues that there was substantial evidence adduced at trial that, "on the evening [Hitchcock] was cited for illegal camping at Kea'au Beach Park, the area in which [Hitchcock] pitched his tent was not designated as a campground" because, although the evidence established that Hitchcock's tent "was in a designated camping area," it also showed that "camping was not permitted on Wednesday and Thursdays [in that] those days were designated as maintenance times at that park." The prosecution additionally points to the evidence that Hitchcock "understood that he risked citation by remaining at the park on Wednesdays and Thursdays" and that he "conceded that the [prosecution] had 'met all the elements . . . to prove this crime and especially in the light most favorable to the [prosecution]'" while arguing in support of his motion for a judgment of acquittal.[6]

HRS § 701–114 (1993) provides, in relevant part, that "no person may be convicted of an offense unless the following are proved beyond a reasonable doubt: . . . [e]ach element of the offense [and t]he state of mind required to establish each element of the offense." ROH § 10–1.2(a)(13), the offense for which Hitchcock was charged, has two elements: (1) the conduct element of "camping"; and (2) the attendant circumstance that such camping may not be done in "any park not designated as a campground." *See* HRS § 702–205 (1993) (stating that the elements of an offense consist of conduct, attendant circumstances, and results of conduct). Thus, the prosecution had the burden to prove, as an attendant circumstance of the offense, that Kea'au Beach Park was "any park not designated as a campground."

Here, the record indicates that there are areas in Kea'au Beach Park where camping is permitted. Although Officer Carino testified that there are signs in the park saying "no camping," he later admitted that certain areas in the park are "designated for camping" and that Hitchcock's tent was in one of the appropriate camping areas on the night in question. The record additionally shows

that the city issued permits to Hitchcock to camp at Kea'au Beach Park and, that, at the time of trial, the city had been issuing Hitchcock such permits every three weeks for about nineteen or twenty months. As such, the evidence adduced at trial sufficiently established that the Kea'au Beach Park is, generally, "designated as a campground." However, all parties acknowledge that camping was not permitted at the beach park on Wednesdays and Thursdays because, according to the terms of the camping permits, the city performed park maintenance on those days. Indeed, Hitchcock admitted that "nobody has a permit" to camp at the beach park on Wednesdays and Thursdays.

The prosecution takes the position that the camping prohibition on Wednesdays and Thursdays established that, on those days, the beach park was "not designated as a campground." On the other hand, Hitchcock claims, as indicated *supra*, that the fact that camping permits are not valid on Wednesdays and Thursdays "only shows that Hitchcock appears to have violated the terms of the permit, and is not material to the issue . . . whether Kea'au Beach Park was designated as a campground[ ] or not." Consequently, the inquiry whether sufficient evidence was adduced at trial to sustain Hitchcock's conviction turns on whether the beach park is "designated as a campground" on Wednesdays and Thursdays, when camping is prohibited.

Because the evidence adduced regarding the beach park and the relevant camping restrictions is not in dispute, the question whether the beach park was "designated as a campground" on Wednesdays and Thursdays becomes a question of law. A review of the ROH reveals that the term "designate" is not defined in ROH § 10–1.2(a)(13), nor is it defined in chapter 10 of the ROH governing "parks and park facilities." However, this court has stated that "[t]he words of law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly

6. The prosecution additionally relies upon the trial court's admission of the certified letter from the Department of Parks and Recreation into evidence "which indicated that camping was not allowed on Wednesdays and Thursdays." However, as previously indicated, the certified letter is not contained in the record on appeal.

grammatical construction of the words as to their general or popular use or meaning." *Stallard v. Consolidated Maui, Inc.*, 103 Hawai'i 468, 476, 83 P.3d 731, 739 (2004) (citing HRS § 1–14 (1993)); *cf. State v. Bayly*, 118 Hawai'i 1, 11, 185 P.3d 186, 196 (2008) (citation omitted) (holding that this court "must heed the 'plain and obvious meaning' of the statute in order to give effect to the intention of the legislature").

Webster's dictionary defines "designate," *inter alia*, as follows: (1) "to declare to be: characterize," as in, "areas *designated* as strategic"; and (2) "to choose and set apart," *e.g.*, "control dams *designated* for construction." *Webster's Third New International Dictionary* 612 (3rd ed.1993) (emphases in original). The aforementioned definitions, however, do not aid in interpreting the term "designate" in the context of the phrase "designated as a campground." Indeed, the definitions provide no guidance as to whether Kea'au Beach Park was continuously "designated as a campground" during the two days each week it was closed to campers for maintenance because such definitions could be used to support either of the aforementioned interpretations submitted by Hitchcock and the prosecution.

Because the "plain and obvious meaning" of the word "designate" cannot be gleaned from the ordinance itself or the dictionary definitions, and the parties essentially present different interpretations, the word "designate," as used in ROH § 10–1.2(a)(13), is ambiguous. We, therefore, turn to ROH § 1–2.1, which governs the construction of ambiguous words in ordinances and provides in relevant part:

> In the construction of ordinances . . . the following rules shall be observed unless it shall be apparent from the context that a different construction is intended:
>
> . . . .
>
> (b) Construction of Ambiguous Words. Where the words are ambiguous:
>
> (1) The meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

> (2) The reason and spirit of the ordinance, resolution, rules and regulations, and the cause which induced enactment or promulgation may be considered to discover its true meaning.
>
> (3) Every construction which leads to an absurdity shall be rejected.

Additionally, this court has stated that, "[i]f [a] statute is ambiguous, and no such plain or obvious meaning emerges, it is permissible for the court to resort to context and extrinsic aids." *Bayly*, 118 Hawai'i at 11, 185 P.3d at 196 (citing HRS §§ 1–15(1) and 1–15(2) (1993) (governing the construction of ambiguous words and phrases)). Accordingly, we look to the context of the word "designate" in the ordinance and the "reason and spirit" of ROH § 10–1.2(a)(13).

With regard to context, we observe that "designate" is used in section 10–1.2(a)(2), which prohibits "[c]limb[ing] onto any tree, except those *designated* for climbing." (Emphasis added.) It is also used in ROH § 10–1.7, which governs "[a]nimals in public parks." ROH § 10–1.7(b) provides in relevant part that

> [t]he director [of parks and recreation] is authorized to *designate* areas in public parks for use by persons having custody and control of dogs on a leash and to *designate* public parks for use as off-leash parks for dogs. In *designating* parks as off-leash parks and in *designating* parks or areas therein for leashed dogs, the director shall consider the park's size, location, and frequency of use by members of the public, as well as the primary actual or designed use of each park or area included in the *designation*. The director shall post signs that notify the public of such *designation* that describe or map the park or park areas so *designated*.

(Emphases added.) Because such ordinance requires the director to (1) consider size, location, frequency of use, and original design for the park prior to making a designation and (2) inform the public of the designation, providing them with adequate notice of the location of areas "so designated," the director's designation appears to be one that is intended to be of a lasting and permanent

nature. In other words, using a common sense approach, a "designation" by the director of a dog park (or, as here, a "campground"), although not entirely unalterable, is likely unchanged by periodic closures due to maintenance or other proffered reasons.

For example, if the director were to post a sign in designated dog parks stating that the presence of dogs for two days each week is prohibited due to the need for maintenance, such prohibition would not change the *designation* of the park as a "dog park"—that is, the park would not lose its designation as a "dog park" merely because a temporary restriction on the presence of dogs in the park had been imposed. Indeed, once the maintenance was finished, the use of the park for dogs would resume and would not require a new "designation" or approval from the director.

Similarly, the terms of Hitchcock's camping permit, prohibiting camping on Wednesdays and Thursdays, do not change the "designation" of the beach park as a campground. To the contrary, Kea'au Beach Park, or at least specific areas therein, remained "designated as a campground" during those two days and that the beach park (like the dog park merely became temporarily unavailable to the public for camping). Indeed, it would be nonsensical to conclude that the beach park is "designated as a campground" for five days out of the week and not so "designated" during the other two days.

As to the "reason and spirit" of the ordinance, ROH § 10–1.2(a)(13) is contained in chapter 10, which governs the use of public parks. Surrounding provisions in ROH § 10–1.2 similarly prohibit certain activities in a public park, including, but not limited to: (1) willful damage or injury to property, ROH § 10–1.2(a)(1); (2) polishing or repairing a car, ROH § 10–1.2(a)(11); (3) entering or remaining during the night hours that the park is closed, ROH § 10–1.2(12); and (4) building or kindling of a fire, other than in a grill or brazier, ROH § 10–1.2(a)(4). Given the nature of the surrounding prohibitions, section 10–1.2 seems to set forth rules primarily designed to protect the safety of park users, as well as preserve the integrity of public park areas. Accordingly, the prohibition against camping in any park "not designated as a campground" in ROH § 10–1.2(a)(13) is a rule designed to promote safety and protect public parks and their users.

Such interpretation is supported by the broad definition of "public park" included in ROH § 10–1.1. The ordinance defines public park as "any park, park roadway, playground, athletic field, beach, beach right-of-way, tennis court, golf course, swimming pool, or other recreation area or facility under the control, maintenance[,] and management of the department of parks and recreation." Applying such definition to the ordinance at issue, it is reasonable to infer that the prohibition of camping in "any *park* not designated as a campground" was enacted to prevent persons from sleeping on park roadways, golf courses, tennis courts, and other places that are arguably unsafe for persons to occupy overnight and/or for any length of time. As a result, it appears that ROH § 10–1.2(a)(13) was promulgated to prohibit persons from occupying areas that were *never intended for use as a campground,* *i.e.,* for overnight occupancy.

However, as previously indicated, the evidence adduced at trial established that Kea'au Beach Park was designated as a campground and, thus, intended for use as a campground. Indeed, Officer Carino admitted that there are campground areas and restroom facilities at the beach park and testified that the park does not have any "closed hours," even at night. Hitchcock additionally indicated that the city had been providing Hitchcock permits to camp at the beach park for almost *two years.* As a result, it would be consistent with the "reason and spirit" of the ordinance, *i.e.,* safety of park users, to interpret the phrase "designated as a campground" as a continuing classification, even when periodic restrictions are imposed on camping for maintenance purposes.

Based on the foregoing, we agree with Hitchcock that, although Officer Carino's testimony that permits were not valid on the day that Hitchcock was cited may show that Hitchcock violated the terms of a permit issued to him, it "is not material to the issue

... whether Kea'au Beach Park was designated as a campground so as to support his conviction for the offense the prosecution elected to charge."[7] We, therefore, conclude that there was insufficient evidence adduced at trial to show that Hitchcock illegally camped "in any park *not designated as a campground*" because: (1) the evidence at trial established that (a) the beach park was designated as a campground and (b) Hitchcock was in the designated camping area on the night he was cited; (2) the park's "designation" as a campground did not change on Wednesdays and Thursdays; and (3) the prosecution relied solely on the Wednesday/Thursday camping prohibition to prove that the beach park was "not designated as campground" on the day that Hitchcock was cited. Consequently, we hold that the trial court erred in convicting Hitchcock for illegal camping pursuant to ROH § 10–1.2(a)(13).

## IV. *CONCLUSION*

Based on the foregoing, we reverse the trial court's April 27, 2009 judgment convicting Hitchcock of illegal camping under ROH § 10–1.2(a)(13).[8]

### Concurring Opinion by ACOBA, J.

I concur in reversal, but on the ground that the oral charge herein was "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had[,]" *State v. Motta*, 66 Haw. 89, 94, 657 P.2d 1019, 1022 (1983) (internal quotation marks and citation omitted); and thus, the court lacked subject matter jurisdiction over the instant case.

### I.

Defendant–Appellant Sean K. Hitchcock (Appellant) was charged via complaint with violating Revised Ordinance of Honolulu (ROH) Park Rules and Regulations § 10–1.2(a). ROH § 10–1.2(a)(13) provides:

**Sec. 10–1.2 Park rules and regulations.**

(a) *Within the limits of any public park*, it is unlawful for any person to:

. . . .

(13) Camp *at any park* not designated as a campground[.]

(Emphases added.) The record indicates that Appellant was orally charged as follows:

[Appellant], on January 14, 2009, within the limits of a public park, you did intentionally, knowingly or recklessly camp *in any area* not designated as a campground thereby committing the offense of illegal camping in violation of Section 10–1.2(a)(14) of the [ROH].

(Emphasis added.) On appeal, Appellant argues, *inter alia*, that the charge failed to specify an essential element of ROH § 10–1.2(a)(13), that "the camping occur '*at any park* not designated as a campground[,]'" and "contained language *fatally different from the ordinance*, when it alleged that the camping occurred '*in any area* not designated as a campground.'" (Brackets omitted.) (Some emphasis in original, some added.) Thus, according to Appellant, the oral charge "failed to state an offense under the pertinent ordinance [Plaintiff–Appellee State of Hawai'i (Appellee)] was proceeding under." On the other hand, Appellee contends that, "[w]here a defendant's challenge to a charge is brought for the first time on appeal, the charge is 'liberally construed in favor of validity' and a conviction thereon will not be reversed without the defendant's showing of prejudice[.]"

### II.

"The failure to allege an essential element of an offense renders a charge fatally defective." *State v. Borochov*, 86 Hawai'i 183, 193, 948 P.2d 604, 614 (App.1997) (citations omitted). As indicated in *State v. Cummings*, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003), a charge that fails to state an offense contains within it a substantive jurisdictional defect, thereby rendering any subsequent tri-

---

7. As noted *supra* note 5, there are other provisions within ROH Chapter 10, Article 1 that could have been applicable to his conduct.

8. In light of our reversal of Hitchcock's conviction, we need not address Hitchcock's remaining contentions regarding the "choice of evils" defense or the constitutionality of ROH § 10–1.2(a)(13).

al, judgment of conviction, or sentence a nullity.

In other words, an oral charge, complaint, or indictment that does not state an offense contains within it a *substantive jurisdictional defect*, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity. *See [State v.] Israel*, 78 Hawai'i [66,] 73, 890 P.2d [303,] 310 [ (1995) ] (quoting [State v.] Elliott, 77 Hawai'i [309,] 311, 884 P.2d [372,] 374 [ (1994) ] (quoting [State v.] Jendrusch, 58 Haw. [279,] 281, 567 P.2d [1242,] 1244 [ (1977) ] )); *Elliott*, 77 Hawai'i at 312, 884 P.2d at 375 ("the omission of an essential element of the crime charged is a defect in substance rather than form" (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244)); *Territory v. Koa Gora*, 37 Haw. 1, 6 (1944) (failure to state an offense is a "jurisdictional point"); *Territory v. Goto*, 27 Haw. 65, 102 (1923) (Peters, C.J., concurring) ("[f]ailure of an indictment[,] [complaint, or oral charge] to state facts sufficient to constitute an offense against the law is jurisdictional[;] . . . an indictment[,] [complaint, or oral charge] . . . is essential to the court's jurisdiction," (brackets added)); HRS § 806-34 (1993) (explaining that an indictment may state an offense "with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary[,]" *inter alia*, "to show that the court has jurisdiction, and to give the accused reasonable notice of the facts").

(Emphasis added.)

### III.

Because Appellant challenges the sufficiency of the charge for the first time on appeal, the "liberal construction standard" applies. *See Motta*, 66 Haw. at 91, 657 P.2d at 1020. In *Motta*, the defendant appealed his jury conviction for burglary in the second degree. *Id.* at 90, 657 P.2d at 1019. The defendant argued that the grand jury indictment

against him failed to allege an essential element in charging the offense of burglary, and therefore, his conviction should be reversed. *Id. Motta* held that because the defendant "failed to raise any objection to the indictment until after trial, it must be liberally construed." [1] *Id.* According to *Motta*, "[o]ur adoption of this liberal construction standard for post-conviction challenges to indictments means we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.* at 91, 657 P.2d at 1020.

### IV.

### A.

In my view, the oral charge "cannot within reason be construed to charge a crime." *Id.* (citations omitted). As recounted, Appellant was charged with camping *"within the limits of a public park, . . . in any area* not designated as a campground[,] thereby committing the offense of illegal camping in violation of Section 10–1.2(a)(13) of the [ROH]." (Emphases added.) By all fair and reasonable constructions, the charge utterly failed to state that camping is prohibited where the *entire park itself* is not designated as a campground, as seemingly intended by ROH 10–1.2(a)(13). Rather, the charge alleges that Appellant camped in an *area "within* the limits of *a public park* " that was not designated as a campground. The phrase "within the limits of a public park" cannot be construed reasonably to charge the offense of camping in a park *which itself was not designated as a campground.* Furthermore, camping in an area within the park that was not designated as a campground is *not* a crime under the ordinance. Appellant was apparently charged in this way, because had the oral charge tracked the language of the ordinance, it would have had to be read as "within the limits of a public park, you did intentionally, knowingly or recklessly camp in any park not designated as a campground[.]" The charge as actually made reflects an alteration of the ordinance and an

---

1. In *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374, this court extended the liberal construction standard to post-conviction challenges to oral charges as well. Accordingly, the liberal construction standard is applicable in the instant case.

attempt to cure its glaring incomprehensibility.[2] Here, the charge is "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had[.]" *Id.* at 94, 657 P.2d at 1022.

I therefore respectfully disagree with the majority's apparent conclusion that the oral charge can within reason be construed to charge a crime. The majority acknowledges that "the prosecution used the word 'area' instead of 'park[.]'" Majority opinion at 378, 235 P.3d at 374. Because ROH § 10–1.2(a)(13) requires that the "park" *itself* was not designated as a campground, the charge omitted an element of the offense.

## B.

Inasmuch as an essential element of the offense was absent from the charge, *Jendrusch* is instructive. In that case, the defendant was convicted of the offense of disorderly conduct in violation of HRS § 711–1101. That statute provided in pertinent part:

(1) A person commits the offense of disorderly conduct if, with intent to cause *physical inconvenience* or alarm by a member or members of the public, or recklessly creating a risk thereof, he:

[. . . .]

(b) Makes unreasonable noise; or

(c) Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response[.]

58 Haw. at 280, 567 P.2d at 1243 (emphasis added). The defendant had been charged as follows:

You (Jendrusch) are hereby charged that in the City and County of Honolulu, State of Hawaii, on or about the 14th day of September, 1974, with intent to cause *public inconvenience,* annoyance or alarm by

members of the public or recklessly creating a risk thereof, you did make unreasonable noise or offensively coarse utterance, gesture or display or address abusive language to any person present, thereby committing the offense of Disorderly Conduct in violation of Section 1101(1)(b) of the Hawaii Penal Code.

*Id.* at 280, 567 P.2d at 1243–44 (emphasis added). The *Jendrusch* court stated, *inter alia,* that "[b]y any fair construction[,] the complaint . . . fail[ed] to state an offense[,]" *id.* at 280–81, 567 P.2d at 1244 (footnote omitted), because not all of the essential elements of the offense were charged. This court explained that

*[a]n essential element of an offense under this statute is an intent or a reckless disregard on the part of the defendant that his conduct will have a specific result. That consequence which the statute seeks to prevent is actual or threatened physical inconvenience to, or alarm by, a member or members of the public.* The intent to produce this particular effect, or recklessly creating a risk thereof, is an essential ingredient of the conduct proscribed by the statute. *It was not enough for the complaint to allege that the defendant had engaged in the conduct* described in subsections (1)(b) and (1)(c) *"with intent to cause public inconvenience,* annoyance, or alarm."

*Id.* at 281–82, 567 P.2d at 1244 (quoting HRS § 711–1101) (emphases added) (footnote omitted).

In the instant case, Appellant was convicted of violating ROH § 10–1.2(a)(13), which requires proof beyond a reasonable doubt that defendant camped "at any park not designated as a campground[.]" In other words, the specific result "which the [ordinance] seeks to prevent[,]" *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244, is camping at a park not designated as a campground, not in an

---

**2.** Arguably the ordinance is not understandable. As it reads, ROH § 10–1.2(a)(13) prohibits "[w]ithin the limits of any *public park,* ... [c]amp[ing] *at any park* not designated as a campground[.]" (Emphases added.) The phrase "at any park" is ambiguous insofar as it follows the introductory phrase "within the limits of any

public park[.]" The ordinance suggests that there are parks within public parks which are not designated as campgrounds. The ordinance also suggests that the introductory phrase refers to a different park than that described in the phrase which follows.

area of a park not designated as a campground. Hence, "[i]t was not enough for the [oral charge] to allege that the [Appellant] had engaged in" camping in an area not designated as a campground. *Id.* at 282, 567 P.2d at 1244.[3] Notably, neither does the ordinance seek to prevent camping in a park which is designated as a campground, on days on which the park, or part of it, is closed for maintenance. Thus, Appellant's conduct as adduced in the instant case would not constitute an offense because such conduct cannot be construed as a crime under the ordinance.

Under *Jendrusch,* contrary to the majority's assertion, the prosecution's alteration of a single word *did* render the charge so defective that it failed to state an offense under the ordinance inasmuch as the charge failed to allege the conduct which the ordinance seeks to prevent. *See* majority opinion at 378, 235 P.3d at 374 ("[I]t cannot be said that the prosecution's alteration of a *single word* ... rendered the oral charge so defective that it did not state an offense. (Emphasis in original.)). According to *Elliott,* although *Jendrusch* "held that the failure to allege an essential element of an offense made a charge 'fatally defective[,]'" this court had "refined the *Jendrusch* rule by adopting the 'liberal construction standard' for post-conviction challenges[ ]" in *Motta. Id.* at 311–12, 884 P.2d at 374–75 (citing *Motta,* 66 Haw. at 91, 657 P.2d at 1020). *Elliott* clarified, however, that *Motta* "expressly noted, ...

that even under that standard, the charge in *Jendrusch* would be fatally defective for failing to allege an essential element of the offense." *Id.* at 312, 884 P.2d at 375 (citing *Motta,* 66 Haw. at 92, 657 P.2d at 1020–21). Thus, this court reaffirmed that the charge in *Jendrusch* would be fatally defective even under the liberal construction approach.

Moreover, even consideration of the charge as a whole cannot cure its defect. A similarly defective accusation was invalidated in *Elliott,* which was decided after *Motta.* In *Elliott,* the defendant had been convicted of (1) resisting arrest in violation of HRS § 710–1026(1)(a) (1985)[4], (2) assault against a police officer in violation of HRS § 707–712.5 (Supp.1992)[5], and (3) disorderly conduct in violation of HRS § 711–1101(1)(b) (1985). 77 Hawai'i at 309, 884 P.2d at 372. The oral charge stated with respect to resisting arrest:

> On or about the 28th day of June, 1991 in Kona, County and State of Hawai'i, [defendant] *attempted to prevent* a Peace Officer acting under color of his official authority from effecting an arrest by using or threatening to use physical force against the peace officer or another thereby committing the offense of resisting arrest in violation of Section 710–1026(1)(a) [HRS] as amended.

*Id.* at 310, 884 P.2d at 373 (emphasis in original) (brackets omitted). The oral charge

---

**3.** While *Jendrusch* was decided before *Motta,* the *Motta* court rejected the conclusion of the Intermediate Court of Appeals (ICA) in *State v. Tuua,* 3 Haw.App. 287, 649 P.2d 1180 (1982), that *Jendrusch* had disfavored the liberal construction approach. *Motta,* 66 Haw. at 91, 657 P.2d at 1020. The *Motta* court stated that, even under the liberal construction standard, "[it] would still find that the charge in *Jendrusch* was 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.'" *Id.; see also Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 (noting that, in *Motta,* this court "expressly noted ... that even under that standard, the charge in *Jendrusch* would be fatally defective for failing to allege an essential element of the offense"). As discussed, I would find the oral charge deficient even under the liberal construction standard.

**4.** At the time, HRS § 710–1026(1)(a) provided in pertinent part:

> **Resisting arrest.** (1) A person commits the offense of resisting arrest if he *intentionally prevents* a peace officer acting under color of his official authority from effecting an arrest by:
> (a) Using or threatening to use physical force against the peace officer or another[.]

*Elliott,* 77 Hawai'i at 310 n. 2, 884 P.2d at 373 n. 2 (emphasis and brackets in original).

**5.** At the time, HRS § 707–712.5(1)(a) provided in pertinent part:

> **Assault against a police officer.** (1) A person commits the offense of assault against a police officer if the person:
> (a) Intentionally, knowingly, or recklessly causes bodily injury to a *police officer who is engaged in the performance of duty[.]*

*Id.* at 310 n. 3, 884 P.2d at 373 n. 3 (brackets and emphasis in original).

with respect to the alleged assault on the police officer stated:

> On or about the 28th day of June, 1991 in Kona, County and State of Hawai'i [defendant] intentionally, knowingly or recklessly caused bodily injury to *Officer Belinda Kahiwa* by biting her thereby committing the offense of assault in the third degree, assault of police office [sic] violation of Section 707–712.5[HRS] as amended.

*Id.* (brackets omitted) (emphasis in original).

The defendant argued that the resisting arrest charge "failed to allege that [the defendant] 'intentionally prevented' a police officer acting under color of authority from effectuating an arrest[.]" *Id.* at 311, 884 P.2d at 374 (brackets omitted). As to the assault charge, the defendant argued that "the State failed to allege that the assault was against 'a police officer who was engaged in the performance of duty.'" *Id.* (brackets omitted).

As to the resisting arrest count, *Elliott* concluded that "the requisite state of mind was omitted from the charge and [there was] no way in which [this court] could reasonably construe it to charge resisting arrest or any included offense." *Id.* at 313, 884 P.2d at 376 (citation omitted). As to the assault charge, *Elliott* noted that "[o]ne way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole." *Id.* at 312, 884 P.2d at 375. However, *Elliott* determined that although the resisting arrest charge referred to a "Peace Officer," such reference was not sufficient to supply the element "police officer ... engaged in the performance of duty[,]" missing from the companion assault charge. *Id. Elliott* reasoned that the "Peace Officer" referenced in the resisting arrest charge could have been referring to an officer different from the one identified by name in the assault on a police officer charge. *Id.* Ultimately, the *Elliott* court decided that both the resisting arrest charge and the assault charge had to be reversed. *Id.* at 313, 884 P.2d at 376.

Preliminarily, *Elliott* establishes that although this court must construe the charge liberally, where the charge cannot be construed to allege all essential elements of the offense, the conviction based on that charge must be reversed. In *Elliott*, it was evident that as to the resisting arrest charge, the charge could not be construed to have alleged the intent element. Additionally, *Elliott* also determined that the reference to a "Peace Officer" in the resisting arrest charge, which connotes an officer engaged in the performance of duty, was not sufficient to supply that element in the companion charge of assault on a police officer.

In the instant case, as recounted, the oral charge failed to allege the essential element "at any park not designated as a campground." *See supra.* Unlike in *Elliott*, here, there is nothing remotely in the charge as a whole from which it could be argued that that essential element might be supplied. Thus, while under the liberal construction standard there is a presumption of validity, "[e]xamin[ing] ... the charge as a whole[,]" *id.* at 312, 884 P.2d at 375, including the phrase "within the limits of a public park," does nothing to connote that the park was not designated as a campground.

## C.

*State v. Sprattling,* 99 Hawai'i 312, 55 P.3d 276 (2002), is not to the contrary. In *Sprattling,* the defendant argued that "the oral charge ... failed to allege [an essential element of the offense,] 'bodily injury[,]' and, instead, simply alleged injury." *Id.* at 317, 55 P.3d at 281. The defendant had been convicted of assault in the third degree, which required that the defendant "[i]ntentionally, knowingly, or recklessly cause[d] *bodily* injury to another person; or [ ] [n]egligently cause[d] *bodily* injury to another person with a dangerous instrument." *Id.* at 314 n. 1, 55 P.3d at 278 n. 1 (quoting HRS § 707–712(1) (1993)) (emphases added). According to the defendant, "the word 'injury' [was] insufficient to state an essential element of the offense because the definition of 'bodily injury' specifies a particular type of injury, whereas 'injury' has a broader definition." *Id.*

The *Sprattling* court rejected the defendant's argument because (1) "[t]he word 'bodily' alone is not an essential element of the offense; it modifies 'injury[,]'" *id.* at 319, 55 P.3d at 283 and (2) "[t]he word 'assault,'" the crime with which the defendant had been

charged, "by definition implies bodily injury[.]" *Id.* In the instant case, unlike in *Sprattling*, it was not merely a modifying word which was omitted inasmuch as the charge failed to allege that the park itself was not designated as a campground. Moreover, neither the crime of illegal camping nor the phrase "within the limits of a park," ROH 10–1.2(a)(13), or any other phrase "by its definition implies" the necessary element of camping in a park that is not designated as a campground. *Sprattling*, 99 Hawai'i at 319, 55 P.3d at 283.

Nevertheless, the majority maintains that, "[b]y indicating that the conduct for which [Appellant] was charged had to have occurred within the limits of a public park, the oral charge can be read (and liberally construed) as indicating that [Appellant] was illegally camping in a *park* that was not designated as a campground[,]" as opposed to merely an area within the park. Majority opinion at 378, 235 P.3d at 374 (emphasis in original). However, in some instances, camping *may* be allowed in certain designated *areas* within the limits of a public park. For example, in the instant case, as noted by the majority, "the record indicates that there are *areas* in [the park] where camping is permitted[.]" *Id.* at 381, 235 P.3d at 377 (emphasis added). "Although Officer Carino testified that there are signs in the park saying 'no camping,' he later admitted that certain *areas* in the park are 'designated for camping[.]'" *Id.* (emphasis added). In fact, "[Appellant's] tent was in one of the appropriate camping areas on the night in question." *Id.* The majority further acknowledges that the record indicates that at the time of trial, the City had been issuing Appellant permits to camp in the park. *Id.*

The foregoing reveals that there are public parks, as in the instant case, within which

certain areas are designated for camping. Thus, contrary to the majority's assertion, the phrase "within the limits of a public park" does not "indicat[e] that [Appellant] was illegally camping in a *park* [itself] ... not designated as a campground," as opposed to merely an area within the park. *Id.* at 378, 235 P.3d at 374 (emphasis in original). Employing practical considerations and common sense, the charge indicates, just as it reads, that Appellant was illegally camping in an area within the limits of a public park that was not designated as a campground. However, such camping is not an offense under the ordinance with which Appellant was charged.[6] But illegally camping in an area within a park may be a violation of a camping permit under ROH § 10–1.3(c). Hence, the anomalous result is that the words of the oral charge under ROH § 10–1.2(a)(13), sustained by the majority, would charge (and it would seem appropriately so) a violation of a different ordinance, ROH § 10–1.3(c), cementing the proposition that the oral charge in the instant case cannot reasonably be construed as alleging the offense designated in ROH § 10–1.2(a)(13).

### V.

As previously stated, "an oral charge, complaint, or indictment that does not state an offense contains within it a *substantive jurisdictional defect*, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity." *Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112 (citations omitted) (emphasis added). Because the charge in the instant case cannot be construed reasonably to charge the offense for which Appellant was convicted, prejudice, surprise, or a resulting hampered

---

6. Indeed, the majority acknowledges that Appellant's conduct as characterized by Officer Carino may be a violation of another ordinance, ROH § 10–1.3(c), which prohibits violation of a camping permit terms. Majority opinion at 383, 235 P.3d at 379. This contradicts the majority's view that

it would be absurd for [Appellant] (or anyone) to believe he was being charged with camping merely in an area of a park not designated as a campground when Officer Carino specifically stated that the basis for his citation of [Appellant] was [Appellant's] presence in the beach park at a time the *park* was not designated as a campground.

Majority opinion at 379, 235 P.3d at 375 (emphasis in original). The foregoing analysis indicates that it would not be absurd for Appellant (or anyone) to believe he was being charged with camping in an area of the park which was not designated as a campground. Appellant could have reasonably believed that, although he had been camping in the area of the park designated for camping, because he understood that the park was closed for maintenance on that day, he was illegally camping in that designated area. However, as noted before, such would not be a crime under the language in ROH § 10–1.3(c).

defense is irrelevant. *See Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (stating that because the defendant "ha[d] not indicated how she was *surprised* or *prejudiced* by the omissions in [the oral charge] . . . , and the *record does not show that she was hampered in her defense, the question, then, [was] whether the oral charges can reasonably be construed to charge [the defendant] with the offenses"* with which she was charged (brackets omitted)) (emphasis added). Hence, there is no need to consider in the alternative, whether Appellant has shown he was prejudiced by the defective charge.

### VI.

Because I agree that Appellant's conviction should be reversed, I concur in the result reached by the majority. I would hold, however, that the oral charge "cannot within reason be construed to charge a crime." *Motta,* 66 Haw. at 91, 657 P.2d at 1020. Because the oral charge cannot be construed reasonably to have charged the offense, the court lacked subject matter jurisdiction over the instant case.[7]

---

7. In light of this analysis, I would not reach the remaining issues raised by Appellant.